In the Matter of the Judicial Settlement of the Accounts of the Executors, etc., of MARY H. VERPLANCK, Deceased.

91   439
112  180
91   439
122  615
91   439
128  378
91   439
137  408
91   439
140  145

The will of V. contained a bequest to her executors of $30,000 in trust " to pay over the net income of $10,000, part of such sum " to each of three unmarried nieces of the testatrix, who were named, " so long as each remains single ; upon the marriage of either to pay over to her $1,000 of the principal of which she has enjoyed the income," and to pay over the residue of the $10,000 to the surviving nephews and nieces of the testatrix. *Held*, that the provision did not involve an unlawful suspension of the power of alienation and was valid ; that each legatee was interested only in $10,000 of the trust fund, and as to each third the trust remained only for the life of the legatee, and when extinguished by her death or previous marriage the title to that portion of the bequest would immediately vest.

The residuary personal estate of the testatrix she gave to her nephews and nieces, the " sons and daughters " of her brother J., and of her sister E., "to be divided equally between them," and in case of the death of any such nephew or niece before the testatrix it was provided that " what would have been his or her share if living, I give to his or her issue, if any, equally.   If there be none then to the survivors of my last aforesaid nephews and nieces and the issue of those deceased *per stirpes* and not *per capita.*" At the time of the execution of the will and at the death of the testatrix her brother J. had two children, a son and a daughter, and her sister E. had nine children living.   *Held,* that in the absence of any thing in other portions of the will showing a contrary intent, said nephews and nieces took *per capita*, not *per stirpes.*

By a codicil the testatrix gave to the children of her brother J., " as a part of their *share* of such residuary bequest," a bond and mortgage executed to the testatrix by their father.   *Held*, that this was not indicative of an intention that said children should take *per stirpes.*

Also *held*, that the amount due upon the mortgage was to be deducted from the shares of the children of J.

As incident to the duty imposed upon surrogates by the Code of Civil Procedure (§§ 2473, 2481, 2743), to settle the accounts of executors and to decree distribution of the estate remaining in their hands " to the persons entitled, according to their respective rights," a surrogate has jurisdiction to construe a will, so far as is necessary, to determine to whom legacies shall be paid.

(Argued January 31, 1883 ; decided March 6, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second department, entered upon an order made

September 13, 1882, which modified and affirmed as modified a decree of the surrogate of the county of Dutchess on settlement of the accounts of the executors of the will of Mary Hobart Verplanck, deceased. (Mem. of decision below, 27 Hun, 609.)

The material facts are stated in the opinion.

*Samuel Hand* for Mary H. Hare *et al.* The surrogate had no jurisdiction in this proceeding to construe the will, or to decide as to the invalidity of the trust, or establish the amount of the distributive shares. (Code, §§ 2546, 2739, 2742, 2743; *Draper* v. *Churchill*, 53 N. Y. 192; *Bevan* v. *Cooper*, 72 id. 317; *Dawson* v. *Jeremiah*, 3 Redf. 130; *Seaman* v. *Whitehead*, 78 N. Y. 308.) The trusts created by the will do not suspend the power of alienation for more than two lives then in being. (*Everett* v. *Everett*, 29 N. Y. 39; *Tucker* v. *Bishop*, 16 id. 402; *Savage* v. *Burnham*, 17 id. 561; *Gilman* v. *Reddington*, 24 id. 9; *Hoppock* v. *Tucker*, 57 id. 202; *Settler* v. *Smith*, 41 id. 328; *Manice* v. *Manice*, 43 id. 303; *More* v. *Hegeman* 72 id. 376; *Monarque* v. *Monarque*, 80 id. 320; *Estate of Dickie*, Daily Register of Dec. 1, 1881.) This case is clearly one where the rule "*per capita*, and not *per stirpes*," applies, and this was evidently the intention of the testatrix. (*Brown* v. *Lyon*, 6 N. Y. 419; *Lee* v. *Lee*, 39 Barb. 172; *Butler* v. *Stratton*, 3 Br. C. C. 367; *Farmer* v. *Kimball*, 46 N. H. 435; *Ferrer* v. *Pyne*, 81 N. Y. 281; *Lockhart* v. *Lockhart*, 3 Jones' Eq. [N. C.] 205; *Dowding* v. *Smith*, 3 Beav. 541; *Harris* v. *Philpot*, 5 Wend. 321; 2 Powell on Devises, by Jarman, 331; 2 Redfield on the Law of Wills, § 3, p. 72, § 5, p. 74.)

*George H. Forster* for Executors and J. Montgomery Hare. The power of the surrogate to appoint an auditor and referee was limited. (*Boughton* v. *Flint*, 74 N. Y. 477, 485; Code of Civil Procedure, §§ 2546, 2739, 2742, 2743, 2625, 2612, 2617, 2644, 2624; *Despard* v. *Churchill*, 53 N. Y. 192; *Bevan* v. *Cooper*, 72 id. 317; *Danser* v. *Jeremiah*, 3 Redf. 130; *Seaman* v. *Whitehead*, 78 N. Y. 308.) It was not necessary that a separate clause should be drawn for each trust and beneficiary.

(*Tucker* v. *Bishop*, 16 N. Y. 402; *Savage* v. *Burnham*, 17 id. 561; *Gilman* v. *Reddington*, 24 id. 9; *Everett* v. *Everett*, 29 id. 39; *Hoppock* v. *Tucker*, 59 id. 202; *Schettler* v. *Smith*, 41 id. 358; *Maurice* v. *Maurice*, 43 id. 303; *Moore* v. *Hegeman*, 72 id. 376; *Monarque* v. *Monarque*, 80 id. 320.) From the words used in the residuary clause it is evident the testatrix intended the distribution under the residuary clause to bo *per capita* and not *per stirpes*. (*Nicholls* v. *Nicholls*, 12 Hun, 624; 75 N. Y. 68; *Ferrer* v. *Pyne*, 81 id. 282; *Vincent* v. *Newhouse*, 83 id. 305; *Brown* v. *Lyon*, 6 id. 419; *Lee* v. *Lee*, 39 Barb. 172; *Butler* v. *Stratton*, 3 Br. C. C. 367; *Farmer* v. *Kimball*, 46 N. H. 435; *Lockhart* v. *Lockhart*, 3 Jones' Eq. [N. C.] 205; *Dowding* v. *Smith*, 3 Beav. 541; *Harris* v. *Philpot*, 5 Ired. 321; 2 Powell on Devises by Jarman, 331; 2 Redfield on the Law of Wills, § 3, p. 72, § 5, p. 74.`

*Malcolm Campbell* for John Henry Hobart, Jr. The trust of $30,000 attempted to be created is invalid, illegal and void, by reason of its being so created and expressed as to leave the absolute ownership and power of alienation a doubtful matter, by failing to make such provision as absolutely excludes all possibility of suspension for more than two lives in being. (*Sattler* v. *Smith*, 41 N. Y. 328; *Everett* v. *Everett*, 29 id. 39.) The trust attempted to be created by the will in respect to the sum of $30,000, for the benefit of the three unmarried nieces of the testatrix, is void by reason of the illegal suspension of absolute ownership of personal property in contravention of the provisions of the statute. (*Everett* v. *Everett*, 29 N. Y. 39; *Hawley* v. *James*, 16 Wend. 61; *Coster* v. *Lorillard*, 14 id. 265; *Schettler* v. *Smith*, 41 N. Y. 328; *Amory* v. *Lord*, 9 N. J. 403; *Knox* v. *Jones*, 47 id. 389; *Thomson* v. *Thomson*, 55 How. Pr. 494; *Savage* v. *Burnham*, 17 N. Y. 561; *Dodge* v. *Pond*, 23 id. 69.) The fund of $30,000 will go to the residuary legatees, and not to the next of kin. (*Kerr* v. *Dougherty*, 79 N. Y. 327; *Beekman* v. *Bonsor*, 23 id. 298.) Under the residuary clause, the son and daughter of the brother of the testatrix are entitled to an equal moiety of the

personal estate. (*Stevenson* v. *Leslie*, 9 Hun, 640 ; *Lachland* v. *Dunning*, 11 B. Monr. [Ky.] 34 ; *Winters' Appeal*, 40 Penn. St. 111 ; *Ferrer* v. *Pyne*, 81 N. Y. 281 ; *Vincent* v. *Newhouse*, 83 id. 505 ; *Huxton* v. *Griffin*, 18 Gratt. 574 ; *Alden* v. *Beall*, 11 Gill & J. 123 ; *Love* v. *Carter*, 2 Jones' Eq. 377 ; *Bool* v. *Mix*, 17 Wend. 119 ; *Balcom* v. *Haynes*, 96 Mass. 204 ; *Risk's Appeal*, 52 Penn. St. 269 ; *Fissel's Appeal*, 27 id. 55 ; *Minter's Appeal*, 40 id. 111 ; *Bevens* v. *Phefer*, 2 Jones, 436 ; *Holbrook* v. *Harrington*, 16 Gray, 102 ; *Lockhart* v. *Lockhart*, 3 Jones' Eq. 205 ; *Rand* v. *Sanger*, 115 Mass. 124 ; *Bossett* v. *Granger*, 100 id. 349 ; *Henderson* v. *Wormack*, 6 Ired. Eq. 437 ; *Jackson* v. *Hunt*, 5 Cow. 221 ; *Hay* v. *Earl of Coventry*, 3 T. R. 85 ; *Lyons* v. *Acker*, 33 Conn. 244 ; *Talcott* v. *Talcott*, 39 id. 186 ; *Bond's Appeal*, 31 id. 183 ; 45 id. 467.) The Surrogate's Court, under the provisions of the Code of Civil Procedure, is clothed with full power to adjudicate upon each and every question involved in the several appeals, and its decree upon those questions is conclusive upon the parties cited to the same extent as the determination of any court of original jurisdiction. (Code, §§ 2624, 2625, 2743 ; *Powell* v. *Deming*, 22 Hun, 235 ; *Bevan* v. *Cooper*, 72 N. Y. 317 ; *Chipman* v. *Montgomery*, 62 id. 221 ; *Powell* v. *Deming*, 21 Hun, 235 ; *Leggett* v. *Leggett*, 24 id. 333 ; *Rice* v. *Harbeson*, 63 N. Y. 493.)

*E. A. Brewster* for Mary C. Hobart. The surrogate correctly decided that Mary C. Hobart and John H. Hobart, Jr., are each entitled to one-fourth of the residue of the estate, after paying the debts of the deceased, the testamentary expenses and the general legacies. (*Ferrer* v. *Pyne*, 81 N. Y. 281 ; *Newell* v. *Nichols*, 12 Hun, 604, 624 ; 75 N. Y. 78.) The bond and mortgage against John H. Hobart, mentioned in the codicils, should not be deducted from the share of his children, for the reason that where different portions of a will are inconsistent, those last expressed must prevail. (*Bradstreet* v. *Clark*, 12 Wend. 601 ; *Van Vechten* v. *Keator*, 63 N. Y. 52.)

Earl, J. The testatrix, Mary H. Verplanck, died in March, 1879, a widow, leaving as her only next of kin and heirs at law,

her brother, John Henry Hobart, and her sister, Elizabeth C. Hare. Mr. Hobart, at the time of his sister's death, was a widower with two children, John Henry Hobart, Jr., and Mary C. Hobart, both of full age. Mrs. Hare was a married woman with nine children, all of full age. The testatrix left a will and four codicils thereto, the provisions of which present the questions for our consideration. Among the provisions of the will is the following : " I give and bequeath to my executors the sum of $30,000, in trust, nevertheless, to safely invest the same and to pay over the net income of $10,000, part of such sum, to each of my unmarried nieces, Mary C. Hobart, Mary H. Hare and Elizabeth C. Hare, so long as each remains single. Upon the marriage of either, to pay over to her $1,000 of the principal of which she has enjoyed the income, and to pay over the residue of such sum of $10,000 to my surviving nephews and nieces, equally, including such newly-married niece, and the issue of those deceased, these last to take what would have been their parents' share if living."

This provision was held by the surrogate to involve an illegal suspension of the power of absolute ownership, and, therefore, void. The General Term of the Supreme Court, in this respect, reversed the decision of the surrogate, and held the provision to be valid ; and we are of that opinion. It is one of the cardinal rules for the construction of wills that such an interpretation shall be given to the language used, if permissible, as will uphold the will rather than destroy it. In this sum of $30,000 the legatees became tenants in common, as to their interests therein, and took distributively and not jointly. Although the whole sum is given *in solido* to the executors, and they are required to invest the whole sum, yet each of the legatees is interested in only $10,000 thereof, and each is to receive the income of only $10,000. As to any niece who does not marry, the trust for her remains during her life, and at her death the sum of $10,000 will be released from the trust, and so as to each third of the $30,000 the trust remains only for the life of each legatee. So, too, if either of the legatees should marry, the trust, as to one-third of the $30,000,

will then be extinguished, and that portion of the trust fund will immediately vest in those to whom it is given over. It is true that no provision is made for the disposition of the fund in case of the death of either one of the nieces unmarried. But the law provides for such a case. The purpose of the trust, as to the legatee dying, will by that event be fully accomplished. There will be no longer any purpose for which the trust could be continued, and hence it will cease, and at once the one-third will pass to those upon whom it would devolve under the provisions of the will, or by law. So that it is impossible to perceive how there is any suspension of the absolute ownership of this fund for a longer period than one life. The cases of *Everitt* v. *Everitt* (29 N. Y. 39), *Moore* v. *Hegeman* (72 id. 376), *Monarque* v. *Monarque* (80 id. 320) are sufficient authorities for these views, and further discussion or illustration is deemed unnecessary.

The will also contains this provision: "All the rest, residue and remainder of my personal property I give and bequeath to my said nephews and nieces, the sons and daughters of my brother, John Henry, and my sister, Elizabeth, to be divided equally between them. In case of the death of any such nephew or niece before me, what would have been his or her share, if living, I give to his or her issue, if any, equally. If there be none, then to the survivors of my last aforesaid nephews and nieces, and the issue of those deceased *per stirpes*, and not *per capita*."

Under this clause the two children of Mr. Hobart claim that the residue of the personal property is to be divided *per stirpes*, one-half to them and the other half to the nine children of Mrs. Hare; and so the surrogate held, and his decision in that respect was affirmed at the General Term. We think otherwise. Looking at the language of the residuary clause alone, according to every authority which has fallen under our observation, we would have to hold that the nephews and nieces took *per capita*. (2 Jarman on Wills, Randolph and Talcot's edition, 75; *Ferrer* v. *Pyne*, 81 N. Y. 281; *Vincent* v. *New-house*, 83 id. 505; *Hoxton* v. *Griffith*, 18 Gratt. 574; *Bal-*

*com* v. *Haynes*, 14 Allen, 204; *Risk's Appeal*, 52 Penn. St. 269; *Bivens* v. *Phifer*, 2 Jones' L. 436 ; *Lockhart* v. *Lockhart*, 3 Jones' Eq. 205.) In this case the legatees are all of equal degree of relationship to the testatrix, and it is not to be supposed that she had any greater affection for, or interest in, one than in another. So far as appears they all had equal claims upon her bounty and liberality. There is no natural or reasonable presumption that she intended to give one of her nephews and nieces, thus situated, any more than another. There is no reason to suppose that she meant to give one of the children of her brother more than four times as much as she intended to give one of the children of her sister. But it is said in many cases that in construing such a clause, as in construing any other clause of a will, notwithstanding the construction which would have to be given to it if standing alone, all parts of the will are to be considered with the view of arriving at the intention of the testator, and that if it can be seen from other portions of the will that it was his intention to dispose of his property *per stirpes* and not *per capita*, it will be so construed. In this will we do not find a single glimpse of evidence that the testatrix intended a *per stirpes* rather than a *per capita* distribution of her residuary personal estate. On the contrary, the will contains several very significant indications that she intended that all her nephews and nieces should share in the estate *per capita*. In the earlier part of her will she disposes of some silver ware to several of her husband's relatives, and then disposes of the residue in the following language: "I give and bequeath all the rest and residue of my silver and plated ware to my nephews and nieces, the children of my brother, John Henry Hobart, and my sister, Elizabeth Hare, the same to be divided among them as nearly equal as possible." Here the language used is nearly identical with that used in the residuary clause under consideration. The division of the silver ware was to be "among" the nephews and nieces "as nearly equal as possible." It cannot be doubted that she there intended a *per capita* division. She makes a special bequest of some silver to Anne H. Miller, a married

daughter of Mrs. Hare; a gold watch and chain, and breastpin to her niece Mary Hobart Hare; a piano, diamond pin and gold chain to her niece Elizabeth C. Hare; a breastpin likeness of her father to her niece Mary C. Hobart; engraved views of St. Peter's to her nephew J. H. Hobart; and $1,000, to her nephew Chandler Hare, who was her godson. In the clause of the will first considered, upon the marriage of either of the three nieces, for whom the trust of $30,000 was created, one-third, after deducting the $1,000 to be paid to the niece upon her marriage, was to be paid over to her " surviving nephews and nieces equally," thus showing her intention, in the end, to divide all but $3,000 of the $30,000, equally among all her nephews and nieces. In the latter part of the residuary clause, she provides, that in case of the death of any nephew or niece before her, the share that the one so dying would otherwise have received should go to his or her issue, if any, equally, thus showing that in her mind her nephews and nieces were the original stocks, and that it was their issue only that were to take by substitution in case of their death before her. Then she further provides that if any of her nephews or nieces should die without issue, before her, the share that the one so dying would have taken should go to the survivors of her " nephews and nieces and the issue of those deceased *per stirpes* and not *per capita.*" Here it is clear again that the testatrix intended that the share which failed in that way, instead of being divided *per stirpes*, among the nephews and nieces, was to be divided *per capita*, and that representation was to take place only in case nephews and nieces had died leaving issue. It appears the testatrix knew the significance of the words *per stirpes* and *per capita*, and where it was necessary to apply them she knew how to apply them; and if she had intended her nephews and nieces instead of taking *per capita* should take *per stirpes*, it would have been quite natural for her to say so. In her will she made provision for her sister, by bequeathing the sum of $10,000, in trust, to her executors, upon which she was during life to receive the income. She also devised all the real estate to her brother and sister in the

following clause : "I give, devise and bequeath my real estate to the same persons to whom it would descend, under the laws of the State, where it is situated, in case of my death intestate."

The second and third codicils also show that the testatrix clearly understood the meaning of the words *per stirpes* and *per capita*, and how to use them, and it will be seen that in the will and in these two codicils that whenever she desires her legatees to take *per stirpes* rather than *per capita* she says so in every instance. In the second codicil she provides as follows : "I give and devise one-half of my real estate to my sister, Elizabeth C. Hare, and in case of her death, to her issue equally, *per stirpes* and not *per capita*." She then gives the remaining half of her real estate, in trust, for the benefit of her brother during life, and then provides : "Upon his death I give, devise and bequeath such real estate, or the proceeds thereof, to the issue of my said brother, equally *per stirpes* and not *per capita ;* if he leave no issue, then to the issue of my said sister, Elizabeth C. Hare, equally, *per stirpes* and not *per capita*." In the third codicil she gives all the rest and residue of her old china to the nephews and nieces of her deceased husband "or to their heirs, and in case of the death of any of them without issue, to the other of said nephews and nieces, or to their heirs, the division thereof to be made equally, as nearly as may be, by my executors, according to their own judgment, between said nephews and nieces, or their heirs *per stirpes* and not *per capita*." So every glimpse we can get from this will, every indication of the intention of the testatrix, shows that, with the exception of the specific bequests which she made to her nephews and nieces, she intended they should share equally *per capita* in the property bequeathed, and there is no indication that she meant the Hobart family and Hare family to share equally as families.

She gives her sister a great deal more than she does her brother, and she gives her two unmarried nieces of the Hare family and her one unmarried niece of the Hobart family each the same interest in the trust for the $30,000.

Some stress is laid by counsel who represented the Hobart children, upon the clause in the second codicil, to which I will now call attention. At the time of making that codicil she held a mortgage for $8,000, executed to her by her brother, and in reference to that she made this provision which, as it comes in question hereafter, I will here give entire. "I give and bequeath to the children of my said brother, John Henry, and their issue, as a part of their share of such residuary bequest, a bond and mortgage made to me by their father, dated July 6, 1869, for the sum of $8,000, or any other security or obligation which I may take in the place of the same from him or any other person, and such original or substituted security shall be received by them as so much on account of their share of my said residuary bequest. In case of the death of my said nephew and niece, children of my said brother, without issue before him, I hereby direct my executors to surrender, give up to him and cancel said bond and mortgage, or any substituted obligation or security made by him or his son. In case a substituted security or obligation made by any other person is held by me in the event of the death of my said nephew and niece without issue before their father, I instruct my executors to collect and pay over to my said brother during his life the income or interest of such security or obligation, and after his death I give and bequeath the principal thereof to the issue of my said sister, Elizabeth C. Hare, equally *per stirpes* and not *per capita.*" This was intended as a modification, or part of the residuary bequest contained in the will, and she here speaks of the "share" of the children of her brother; and the claim is that she thus indicates that the two children take one share. But this is not very significant. What she undoubtedly meant was that the amount of this bond and mortgage should, in the first instance, be deducted from the amount which was bequeathed to the two children of her brother, and the same language would be quite appropriate whether they took *per stirpes*, two-fourths of the residuary estate, or whether they took *per capita*, two-elevenths of it.

This is not precisely like some of the cases to which we have been referred, a bequest to the children or the family of her brother, John Henry, and the children or family of her sister, Elizabeth, to be divided equally between them. Neither is this, like some of the other cases referred to, a bequest to her brother, John Henry, and the children of her sister, Elizabeth, to be divided equally between them, and it is not like the case of a bequest to persons related in different degrees. But here it must be noticed that the bequest is to her nephews and nieces, the sons and daughters of her brother and sister. Her brother did not have sons or daughters, and it thus appears that the testatrix had in mind as a class all the sons and all the daughters of both her brother and sister. The bequest was to her nephews and nieces, to be divided among them, and the further language describing them as the sons and daughters of her brother and sister was very probably inserted for the purpose of distinguishing these nephews and nieces from her nephews and nieces who were of the blood of her husband, for some of whom she made provision in her will. We are, therefore, of opinion that both the surrogate and the Supreme Court fell into error in holding that the residuary personal estate was bequeathed, one-half to the children of John Henry Hobart, and the other half to the children of Elizabeth Hare.

Both the surrogate and the General Term held that the amount due upon the mortgage mentioned in the clause of the second codicil above set out, which she held against her brother, should be deducted from the share of her brother's children; and in that construction we concur. We think it was the plain intention of the testatrix that the amount due her from her brother, which had upon the security of the mortgage been advanced to him, should be taken out of the shares of his children, or that it should be considered a part of their shares. It is sufficient to say that we have not been convinced, by the very careful briefs submitted to us on behalf of the Hobart children, that any injustice has been done them by this construction.

The claim was also made on the argument before us that

the surrogate did not have jurisdiction to construe the will, or to decide upon the validity of the trust, or to establish the amount of the distributive shares. We think otherwise. Section 2472 of the Code of Civil Procedure provides, that the surrogate has jurisdiction "to direct and control the conduct, and settle the accounts of executors, administrators and testamentary trustees." "To enforce the payment of debts and legacies, the distribution of the estates of decedents, and the payment or delivery by executors, administrators and testamentary trustees, of money or other property in their possession, belonging to the estate." "To administer justice in all matters relating to the affairs of decedents according to the provisions of the statutes relating thereto." And in section 2481 it is provided, among other things, that "the surrogate may exercise such incidental powers as are necessary to carry into effect the powers expressly conferred." The surrogate has jurisdiction over the settlement of the accounts of executors and administrators; and in section 2743 it is provided, that, "when an account is judicially settled, as prescribed in this article, and any part of the estate remains, and is ready to be distributed to the creditors, legatees, next of kin, husband or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled, according to their respective rights." As incident to the duty thus cast upon the surrogate, he must have jurisdiction to construe wills, so far as needful, at least to determine to whom legacies shall be paid; and this, it is believed, is a power which the surrogates of this State have always exercised. We were unanimously of the opinion that they possessed such a power under the provisions of the Revised Statutes before the Code of Civil Procedure, and it was clearly not the intention of the Code to narrow or diminish the jurisdiction of surrogates, but rather to enlarge it. Upon this subject our views were quite fully expressed in the case of *Riggs* v. *Cragg* (89 N. Y. 479) and the authorities bearing upon the subject were there cited.

We have, therefore, reached the conclusion that the judgment of the General Term and the decree of the surrogate should

be modified so as to require a *per capita* division of the property, bequeathed by the residuary clause, among the nephews and nieces of the testatrix, and as thus modified they should be affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.