<hr/>

CHAUTAUQUA COUNTY.—HON. DANIEL SHERMAN, SURROGATE.—May, 1887.

MATTER OF THOMPSON.

*In the matter of the judicial settlement of the account of the executors of the will of* MELVIN THOMPSON, *deceased.*

Testator died in 1875, leaving a farm worth $8,000, incumbered by mortgages for $4,600, and personal property consisting mostly of cattle and farming implements, worth $2,000. A widow, and twelve children, eight of whom were minors, survived him. The will gave all the property to the widow for life, and, at her death, to the children in equal shares, except that two adult sons, who were appointed executors, were to "receive out of his estate a just and reasonable compensation for their labor and services, and for redeeming said estate from the mortgages with which it was incumbered." The executors, upon probate of the will, took possession of the farm and property thereon, made an inventory, and, with the aid of the widow, worked the farm, keeping the family together, paid the mortgage interest and $1,500 of the principal, and supported and educated the minor children, until the widow's death in 1883,—without objection on the part of the other beneficiaries.

The executors kept an itemized account of their receipts and disbursements during the eight years of their stewardship. Upon their accounting, four of the children contended that the executors should be paid for their services and reimbursed for their payments exclusively from the estate of the widow. Parol evidence was offered, of declarations by testator, contemporaneous with the making of the will, of a desire that the executors should adopt the course which they had pursued, and be paid and reimbursed out of his estate.—*Held*,

1. That the Surrogate had jurisdiction to construe the will, as an incident to his power to settle the estate and decree distribution.

2. That the parol evidence offered was competent to show testator's intent, upon the point at issue.

3. That the executors were entitled to payment out of testator's estate for their services and expenditures.

As to whether the other adult beneficiaries, being aware of the construction given to the will by the executors, and not objecting to their acts during the eight years of their service, were estopped from thereafter contending for a different construction—*quœre*.

CONSTRUCTION of will in proceedings for judicial settlement of executors' account.

A. C. PICKARD, *for executors.*

C. F. CHAPMAN, *for Abram M. Thompson and Emma A. Thompson.*

S. P. FOX, *special guardian.*

THE SURROGATE.—Two questions are raised by the objectors in this proceeding: 1st, Has the Surrogate jurisdiction, as an incident to the judicial settlement of the accounts of the executors, to give construction to the third clause of the will of the testator; 2nd, Does this will authorize payment to Quincy M. and Hiram A. Thompson, executors, for their labor and services since the death of the testator, in support of his family and in carrying on the farm and in paying off mortgages thereon ?

The facts appearing from the evidence are briefly stated. Melvin Thompson died at the town of Ellery, March 17th, 1875, owning a farm of 290 acres, of the

value of $8,000, and personal property consisting mostly of cows, stock and farming implements, of the value of $2,000, and owing no debts of any amount, except two mortgages upon the farm, one for $3,100, and the other for $1,500, drawing interest at 7 per cent.   The testator left, at his death, his widow Pricilla D. Thompson and 12 children by her, of whom, Hiram, Quincy, Abram and Mary were of age.   His other eight children were minors, of whom five were girls and 3 boys, the youngest being, at the death of their father, only six years old.   The two youngest, Elmer, now aged 20 years, and Sarah, aged 18, appear herein by S. P. Fox, their special guardian.   During over two years preceding his death, he had been in poor and failing health, under treatment of a physician at different times, was of the age of 60 years at the time he made his will, December 5th 1874, and was evidently of the belief that he had not long to live, and died in less than four months thereafter.

By the second clause of his will, he gave to his wife the use of his real and personal property during her life.   By the third clause of his will (of which construction is asked) he devised to his 12 children, at the death of his wife, his property real and personal, to be equally divided between them, share and share alike, except that his sons Quincy M. and Hiram A. (his executors) should receive out of his estate a just and reasonable compensation for their labor and services, and for redeeming said estate from the mortgages with which it was encumbered.—By the fourth clause, he appointed his sons Hiram A., and Quincy M. Thompson his executors, with power to compromise

any claim that might exist either against or in favor of his estate.

The attorney who drafted this will and was witness thereto testified, under objection, that, at the time he went there to draft the will, the testator went on and stated the situation of things, the condition of his property and family, and then stated how he wanted his will made, mentioned the number of his minor children and his wife, said that he was more solicitous about them than the others who were then of age, and that this could be better secured by Hiram and Quincy staying there and carrying on the farm with her and the minor children, than by their going away; and that upon his death he wanted Hiram and Quincy to stay there on the farm and if they did so, he wanted them paid out of the estate for so doing, and that Mrs. Thompson and all the members of his family were in and out of the room while the will was being drawn. This testimony is not contradicted. I find that this testimony, being concurrent with the making of the will, was competent in aid of its construction, in showing the intention of the testator.

The executors went into possession of the farm, cows, stock, and farming implements thereon, upon the probate of the will on March 25th, 1875, made an inventory of the personal property of the decedent, and with the assistance of their mother, widow of decedent, worked and carried on the farm, keeping the family together, clothing and educating the minor children in about the same way their father had done in his life time, from March 25th, 1875, until the death of their mother on June 12th, 1883, being over eight

years.   During this time, they paid off the mortgage of $1,500 and interest on the farm, and paid the interest annually on the other mortgage of $3,100, and accruing taxes, annually, on the property, without any objections appearing on the part of the other adult heirs.   The executors, during the eight years they so worked the farm, kept an itemized account, from day to day, of their receipts and disbursements in carrying on the farm, and of the products thereof sold by them, and of payments on account of the children and family, and payments of taxes and of principal and interest on the mortgages, and expenses connected with their trust under said will, which account is filed in the Surrogate's office.

It is claimed by the learned counsel for the adult legatees Abram M. and Emma A. Thompson, and by the special guardian of Elmer E. and Sarah, minor children of the testator, that, as the testator by his will gave the use of his property to his widow during her life, whatever claim the executors Hiram and Quincy may have for their labor and services in carrying on the farm and in supporting the minor children, for payments upon the mortgages, etc., were, under the will, intended by the testator to have been wholly paid by the widow from her life interest in the property.

I do not so read the will, as it expressly provides that, upon the death of his wife, his property should be equally divided between his children, share and share alike, " except that his sons Quincy and Hiram should receive *out of his estate* a just and reasonable compensation for their labor and services, and for redeem-

ing said estate from mortgages with which it is now incumbered," and I find that, by the words "their labor and services," the testator intended labor and services to be performed by the executors in carrying on the farm between his death and the decease of his wife and in paying off the mortgages thereon—an arrangement certainly very beneficial to his estate, and especially so to his widow and minor children, whom he was most solicitous for, and exceptionally beneficial to his two youngest children, who during 8 years of their infancy received most substantial benefits in their support, clothing and education, from the construction of their father's will as understood and acted upon by his executors, but who now object to such construction through their special guardian. Only four of the twelve children of the deceased appear and ask for a construction of the will different from that claimed by the executors.

I find that the testator, by the third clause of his will, intended that his two sons Hiram and Quincy, executors thereof, should remain upon his said farm after his death until the decease of his wife, and by their labor and services assist in carrying it on, and in redeeming the same from the mortgages with which it was incumbered, and that for such labor and services they should be paid a just and reasonable compensation out of his estate.

There is another question to be considered in this case, as to the right and good faith of the adult legatees, to at this late day first object to the construction of this will as claimed by the executors. The evidence shows that such legatees were present at the time the

will was made, and must have had knowledge of its provisions and of the construction which the executors claimed for it. Are they not estopped now from claiming, for the first time, a different construction, after remaining silent for over eight years, when the executors were expending their labor and services in carrying on the farm, and supporting the minor children, and in paying off the mortgages alike for the benefit of the objectors and of the minor children ?

The important question in this proceeding relates to the jurisdiction of the Surrogate's court in giving construction to the will of the testator, incident to the judicial settlement of the accounts of the executors. The Surrogate's court has only such powers as are given it by the statute. It has not general jurisdiction in giving construction to wills. Section 2624 of the Code of Civil Procedure, has, however, enlarged the jurisdiction of the court in the construction of wills on probate. Its authority to give construction to the will of the decedent is claimed under its general powers in the settlement of estates and making distributions to legatees. 2 R. S., 95, § 71, gave to a Surrogate's court the power "to settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom the same shall be payable and the sum to be paid to each person." Sections 2472, 2481, subd. 11 and § 2743 of the Code of Civil Procedure give to such courts the same if not enlarged powers in the settlement of estates.

The counsel for the objectors cite, as authority against the claimants, Bevan v. Cooper (72 *N. Y.*, 317) which held that the Surrogate's court had not

jurisdiction to determine the question whether certain legacies given by the will in that case were charges upon the real estate. But the court held that that question was not involved in the accounting, and was not necessary to be determined by the Surrogate as incident to the accounting and distribution (*In re* Verplank, 91 *N. Y.*, 439). I find that the Surrogate's court has jurisdiction in this case to pass upon these claims of the executors, as incident to its general powers in the settlement of estates (Riggs v. Cragg, 89 *N. Y.*, 479; Purdy v. Hoyt, 92 *N. Y.*, 448; Dubois v. Brown, 1 *Dem.*, 317; Matter of Collyer, 4 *id.*, 24; Fernbacher v. Fernbacher, 4 *id.*, 227).