JAMES W. WADSWORTH, Individually and as Trustee of JAMES WADSWORTH, Deceased, Respondent, *v.* CHARLES JAMES MURRAY, CHARLES F. WADSWORTH and MARY W. WADSWORTH and JAMES W. WADSWORTH et al., as Trustees of the "Sons' Trusts" under the Will of JAMES S. WADSWORTH, Deceased, Appellants.

1. WILL — RULES OF CONSTRUCTION. When a testator employs language which is clear, definite, and incapable of any other meaning than that which is conveyed by the words used, there is no reason for resorting to the rules of construction that are invoked in the case of ambiguous wills.

2. REMAINDER TO TESTATOR'S HEIRS — TIME WHEN HEIRS ARE TO BE DETERMINED. The heirs of a testator who are entitled to take under a devise providing that in case of the death without lawful issue of a person for whom the estate is held in trust during his natural life the entire estate shall descend to testator's "heirs at law" in the same manner

that it would have descended to them if the will had not been made and the beneficiary had died during testator's life, are to be ascertained as of the date of the testator's death.

3. TESTATOR'S INTENT AS TO EXCLUSION OF HEIR. One for whose benefit during life a trust is created by will, with the provision that on his death without lawful issue the estate shall go to testator's heirs as if the will had not been made and the beneficiary had died before the testator, will not be excluded from taking, as heir of testator's daughter, a share of her interest in the remainder which the will vested in her, subject to being divested if the beneficiary died leaving issue.

4. TESTATOR'S INTENT TO DISINHERIT ALIEN GRANDSON. The supposition that a testator did not intend to disinherit the child of his only surviving daughter will not prevent the exclusion of such child, who is an alien, from the heirs to whom a remainder is given on the death of a beneficiary without lawful issue, where the testator could not have anticipated the question of alienage, as his daughter at the time of his death was unmarried and a member of his household.

5. PROCEEDS OF SALE OF LAND AS PERSONALTY OR REAL ESTATE. The proceeds of sales of land made by trustees under a will authorizing such sales and the investment of the proceeds in other lands or in stocks, at their discretion, will not be deemed real estate for the purpose of determining the effect of a will of testator's son, although the original will provided that such sales should be held upon the same trusts and be disposed of in the same manner as if the lands had not been sold, since this provision merely shows the intention that the sales of the land should not vary the ultimate disposition which the will had made of the *corpus* of the trust.

6. JUDGMENT — EFFECT OF — DETERMINING VALIDITY OF DEED. An adjudication that by a deed the grantees have become the owners of certain property is conclusive in another action, against the contention that the deed was void for uncertainty in describing the property.

*Wadsworth* v. *Murray*, 29 App. Div. 191, affirmed.

(Argued November 22, 1899; decided January 9, 1900.)

APPEALS from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 17, 1898, affirming a judgment of the Special Term, adjudging that the appellant Charles James Murray is entitled to no interest in the property held in trust under the will of James Wadsworth, deceased, for the benefit of Martin Brimmer, Jr., during his life; also adjudging the secondary question as to the distribution of the share of James S. Wadsworth's estate to a certain portion of said trust property.

This action was brought to procure the final settlement of

the accounts of the trustees of the trust created by the will of James Wadsworth, deceased, for the benefit of Martin Brimmer, Jr., and to obtain a construction of the will.

The facts, so far as material, are stated in the opinion.

*Treadwell Cleveland* and *William V. Rowe* for appellant Charles J. Murray.   There being no specific intent expressed, the court must apply the settled rules of construction and construe the will in accordance with the dictates of reason and justice, imputing to the language of the testator such a meaning as, under all the circumstances, will conform to his probable intention. (*Bisson* v. *W. S. R. R. Co.,* 143 N. Y. 125 ; *Johnson* v. *Brasington,* 156 N. Y. 181 ; *Roe* v. *Vingut,* 117 N. Y. 212 ; *Matter of Paton,* 111 N. Y. 480 ; *Low* v. *Harmony,* 72 N. Y. 408 ; *Matter of Brown,* 93 N. Y. 295 ; *Matter of Miller,* 18 App. Div. 211 ; *Goodwin* v. *Coddington,* 154 N. Y. 283, 286 ; *Vanderzee* v. *Slingerland,* 103 N. Y. 54.)   The will discloses a general intent to vest the testator's real estate in possession in his own line, and a clearly expressed intent to exclude Martin Brimmer personally, and all claiming through him who shall not be of the blood of the testator, from any participation in the actual division of that portion of his real estate held in trust for Brimmer's benefit, upon the falling in of the remainder.   The construction adopted below defeats that intent. (*Heard* v. *Read,* 169 Mass. 216 ; *Campbell* v. *Rawdon,* 18 N. Y. 419 ; *Hardy* v. *Gage,* 66 N. H. 552 ; *Bisson* v. *W. S. R. R. Co.,* 143 N. Y. 125.)   The testator having excluded Martin Brimmer from sharing in the remainder as if he " had died without issue before my decease," the technical rule of construction that where there is a gift to " heirs at law " or " next of kin " generally, the class is, ordinarily, determinable as of the time of the testator's death, does not apply, the testator having, by such exclusion, created an artificial class of devisees which can be determined only upon the death of Martin Brimmer and the falling in of the remainder. (*Abbott* v. *Bradstreet,* 3 Allen, 589 ; *Bullock* v.

*Downes,* 9 H. L. Cas. 1 ; *Patten* v. *Sparks,* 72 L. T. Rep. 5 ;
*Cusack* v. *Rood,* 24 Wkly. Rep. 391 ; *Fargo* v. *Miller,* 150
Mass. 229 ; Hawkins on Wills [Am. ed.], 100 ; *Lawton* v.
*Corlies,* 127 N. Y. 100 ; *Heard* v. *Read,* 169 Mass. 216 ;
*Welch* v. *Brimmer,* 169 Mass. 204; *Sears* v. *Russell,* 8 Gray,
86.)    Where the context demonstrates that the person or per-
sons to take under the description of next of kin is a person
or persons to be ascertained at a future period, or that it is
the testator's intention to exclude the tenant for life from the
description of next of kin, the expression must be necessarily
understood as meaning the testator's next of kin living at the
death of the tenant for life.   (2 Williams on Executors [7th
Am. ed.], 403, 404; 2 Jarman on Wills [6th Am. ed.], 143 ;
*Holloway* v. *Holloway,* 5 Ves. 399; *Briden* v. *Hewlett,*
2 Myl. & K. 90 ; *Miller* v. *Eaton,* Coop. Ch. Cas. 272 ;
*Delaney* v. *McCormack,* 88 N. Y. 174; *Pinkham* v. *Blair,*
57 N. H. 241; *Hardy* v. *Gage,* 66 N. H. 552; *Sears* v. *Rus-
sell,* 8 Gray, 86 ; *Knowlton* v. *Sanderson,* 141 Mass. 323 ;
*Wood* v. *Bullard,* 151 Mass. 225; *Welch* v. *Brimmer,* 169
Mass. 204.)    The words expressing futurity, constantly
employed by the testator in the clause in question, and the
fact that a portion of the property devised — the accumula-
tions of rents — were, under the provisions of the will, to
come into existence only after the death of the testator and
during the continuance of Brimmer's life estate, also clearly
indicate that the testator intended that the class " heirs at
law " should be ascertained at the time of Brimmer's death.
(*Welch* v. *Brimmer,* 169 Mass. 204; *Heard* v. *Read,* 169
Mass. 216 ; *Butler* v. *Bushnell,* 3 M. & K. 232; *Matter of
Morley,* 25 Wkly. Rep. 825 ; *Booth* v. *Vicars,* 1 Coll. Ch. 6 ;
*Delaney* v. *McCormack,* 88 N. Y. 174 ; *Wharton* v. *Barker,*
4 K. & J. 483 ; *Long* v. *Blackall,* 3 Ves. 486; *Holloway* v.
*Holloway,* 5 Ves. 403 ; *Wood* v. *Bullard,* 151 Mass. 324.)
The remainder is clearly contingent upon survivorship, and
thus furnishes another indication that the testator intended
that the class " heirs at law " should be ascertained at the death
of Brimmer.   (2 Jarman on Wills [6th ed.], 92 ; *Wood* v.

*Bullard,* 151 Mass. 332 ; *Matter of Baer,* 147 N. Y. 348 ; *Warner* v. *Durant,* 76 N. Y. 133 ; *Smith* v. *Edwards,* 88 N. Y. 103 ; *Delaney* v. *McCormack,* 88 N. Y. 174.) The defendant Murray takes by devise, on the death of Martin Brimmer, as one of the heirs at law described by the testator, and, as such devisee, is entitled, under the statutes and the present well-defined public policy of the state, to take and hold the interest thus devised. (L. 1872, ch. 120 ; *McGillis* v. *McGillis,* 154 N. Y. 532 ; *Hardy* v. *Gage,* 66 N. H. 552.)

*J. B. Adams* for appellants Charles F. and Mary W. Wadsworth. The appellant Mary W. Wadsworth (now Chandler), as the only living issue of Charles F. Wadsworth and his sole heir at law apparent, is seized in fee of the one undivided third of the real estate in Livingston and Monroe counties, embraced in the Sons' Trust under the will of James S. Wadsworth, deceased, subject to the payment to Charles F. Wadsworth, during his life, of the income derived therefrom by the trustees of such Sons' Trust. (Gerard on Tit. [4th ed.] 381 ; Story's Eq. Juris. [11th ed.] § 791 ; *Matter of James,* 146 N. Y. 78.) The appellant Charles F. Wadsworth is entitled to have the direction of his grandfather, the testator, to the effect that such proceeds of the sale of real estate in the Brimmer trust should be impressed with the character of real estate, and should be "held, descend, go, and be disposed of in the same manner that the same would have been held, descended, gone, and been disposed of if the real estate had not been sold," respected and enforced for his benefit during his life. (*Ham* v. *Van Orden,* 84 N. Y. 257 ; *Radley* v. *Kuhn,* 97 N. Y. 26.) Neither the proceedings in bankruptcy, nor the judgment or decree in the action for an accounting by Martin Brimmer will defeat the right and title of Mary W. Wadsworth, in case she shall survive Charles F. Wadsworth, to enter into possession of, and have, hold and enjoy the $9,817.40 in money now in the hands of said plaintiff as trustee of Martin Brimmer, which was derived from the sales of such trust property in Livingston and Monroe counties.

(*Dailey* v. *White*, 41 N. H. 337; *Rollin* v. *Pickett*, 2 Hill, 552; *Peck* v. *Mallams*, 10 N. Y. 509; *Jackson* v. *Rosevelt*, 13 Johns. 97; *Thayer* v. *Finton*, 108 N. Y. 394.)

*Edward P. Coyne* for James W. Wadsworth et al., as trustees, etc., appellants.

*John G. Milburn* for William A. Wadsworth, respondent. William W. Wadsworth, James S. Wadsworth and Elizabeth Wadsworth, the two sons and the daughter of the testator, took under the will a remainder estate in the Brimmer quarter, which was descendible, devisable and alienable. (*McArthur* v. *Scott*, 113 U. S. 380; *Dove* v. *Torr*, 128 Mass. 38; *Hersee* v. *Simpson*, 154 N. Y. 496; *Hennessy* v. *Patterson*, 85 N. Y. 103; *Doe* v. *Lawson*, 3 East, 278; *Bullock* v. *Downs*, 9 H. L. Cas. 1; *Mortimer* v. *Mortimer*, L. R. [4 App. Cas.] 448; *Rawlinson* v. *Wass*, 9 Hare, 673; *Minott* v. *Tappan*, 122 Mass. 535; *Whall* v. *Converse*, 146 Mass. 345.) There is no warrant in the will or the cases for the contention that the will should be construed as if it read that on the death of Brimmer without issue the property should descend to and vest in those answering to the description of heirs at law of the testator at the time of Brimmer's death. (*Heard* v. *Read*, 169 Mass. 216; *Kenneston* v. *Mayhew*, 169 Mass. 166; 2 Williams on Ex. [7th Am. ed.] 403; *Matter of Seaman*, 147 N. Y. 69; *Corse* v. *Chapman*, 153 N. Y. 466; *Nelson* v. *Russell*, 135 N. Y. 137; *Hersee* v. *Simpson*, 154 N. Y. 496; *Doe* v. *Lawson*, 3 East, 278; *Bullock* v. *Downs*, 9 H. L. Cas. 1; *Mortimer* v. *Mortimer*, L. R. [4 App. Cas.] 448; *Rawlinson* v. *Wass*, 9 Hare, 673.) The expectant estate of Elizabeth Wadsworth descended at her death intestate to her brothers William W. and James S. Wadsworth, and to her nephew, Martin Brimmer, Jr., the son of her deceased sister. (1 R. S. 726, § 35; *Hennessy* v. *Patterson*, 85 N. Y. 91; *Orser* v. *Hoag*, 3 Hill, 79; *Jackson* v. *Jackson*, 7 Johns. 214; 2 Kent's Comm. 56; *Orr* v. *Hodgson*, 4 Wheat. 453; *Johnson* v. *Fitz Simmons*, 10 Wend. 1; *Luhrs* v.

*Eimer*, 80 N. Y. 179.) The rights of the parties were fixed at the time of descent cast according to the statutes then existing with regard to aliens. (*People* v. *Conklin*, 2 Hill, 67; *Luhrs* v. *Eimer*, 80 N. Y. 171; *Weiland* v. *Renner*, 65 How. Pr. 245; *Sullivan* v. *Bennett*, 105 U. S. 334.)

*James Breck Perkins* for Herbert Wadsworth, respondent. The general rule is well settled that where, on the termination of a life estate, a remainder is limited to the heirs of the testator, the will is deemed to speak as of the time of his death, and his heirs at that time take a vested remainder. (*Whall* v. *Converse*, 146 Mass. 345; *Holloway* v. *Holloway*, 5 Ves. 399; *Doe* v. *Lawson*, 3 East, 278; *Bullock* v. *Downs*, 9 H. L. Cas. 1; *Mortimer* v. *Mortimer*, L. R. [4 App. Cas.] 448; *Harris* v. *McLaran*, 30 Miss. 533; *Minott* v. *Tappan*, 122 Mass. 535; *Abbott* v. *Bradstreet*, 3 Allen, 587.) The position of the appellant, that by the exclusion of Brimmer's heirs, a new and artificial class was created which was to be designated at Brimmer's death and not at the death of the testator, cannot be sustained. (*Bisson* v. *U. S. R. R. Co.*, 143 N. Y. 125; *Warner* v. *Durant*, 76 N. Y. 133.) The testator has by express words designated the persons who shall take, and any other construction than that adopted by the judge at Special Term would violate this intention as manifested in plain language. (*Orser* v. *Hoag*, 3 Hill, 79.)

*John R. Strang*, respondent in person, and for James S. Wadsworth et al., respondents. There is no force in the suggestion made by counsel for appellants Charles F. Wadsworth and Mary W. Wadsworth that the deed of the assignee in bankruptcy was void for uncertainty, and even if there was these appellants are not in a position to assert it. (*C. C. Bank* v. *White*, 6 N. Y. 236; *Jackson* v. *Delancey*, 4 Cow. 427; 2 Hilliard on Real Prop. [3d ed.] 355, § 46.)

*John L. Cadwalader* for William S. Dexter, executor, et al., trustees, etc., respondents. The words "heirs at law" in

James Wadsworth's will mean those who were his heirs at his death, and not those who might have been such if he had died when Martin Brimmer, Jr., died. (*Doe* v. *Lawson*, 3 East, 278; *Bullock* v. *Downs*, 9 H. L. Cas. 1; *Mortimore* v. *Mortimore*, L. R. [4 App. Cas.] 448; *Holloway* v. *Holloway*, 5 Ves. 399; *Harrington* v. *Harte*, 1 Cox Ch. Cas. 131; *Ware* v. *Rowland*, 2 Phillips, 635; *Seifferth* v. *Badham*, 9 Beav. 370; *Baker* v. *Gibson*, 12 Beav. 101; *Harrison* v. *Harrison*, 28 Beav. 21; *Urquehart* v. *Urquehart*, 13 Simons, 613.) Elizabeth Murray's estate in the Brimmer trust property descended to her brothers, James S. Wadsworth and William W. Wadsworth, and to her nephew, Martin Brimmer, Jr. (*People* v. *Conklin*, 2 Hill, 67; *Luhrs* v. *Eimer*, 80 N. Y. 171; *Sullivan* v. *Burnett*, 105 U. S. 334; *Wadsworth* v. *Wadsworth*, 12 N. Y. 376; *Huenstein* v. *Lynham*, 100 U. S. 483; 2 Kent's Comm. 56; *Orser* v. *Hoag*, 3 Hill, 79; *Jackson* v. *Jackson*, 7 Johns. 214; *Jackson* v. *Green*, 7 Wend. 333; *Johnson* v. *Fitz Simmons*, 10 Wend. 1.) The executor and trustees of Martin Brimmer are entitled to one-half of all the interest of Charles F. Wadsworth in the principal of the Brimmer trust. (Gerard on Titles [4th ed.], 383, 501; *Graham* v. *De Witt*, 3 Bradf. 186; *White* v. *Howard*, 46 N. Y. 144; *Lawton* v. *Corlies*, 127 N. Y. 100; *Gourley* v. *Campbell*, 66 N. Y. 169; *Parker* v. *Linden*, 113 N. Y. 28; *Matter of Tienken*, 131 N. Y. 391; *Chamberlain* v. *Taylor*, 105 N. Y. 185; *C. C. Bank* v. *White*, 6 N. Y. 236; *Sanders* v. *Townshend*, 89 N. Y. 623.)

*Lewis C. O'Connor* for guardian ad litem of infants, respondents.

BARTLETT, J. This case is brought before the court by three separate appeals. The first is taken by the defendant Charles James Murray, who, as the alien grandson of the testator, claims his mother's share in the property embraced within what is known as the "Brimmer Trust," under the will of his grandfather, James Wadsworth, deceased.

36

Opinion of the Court, per BARTLETT, J.          [Vol. 161

The other two appeals refer to a different question and will be considered later.

James Wadsworth, of Geneseo, in the county of Livingston, died on the 6th day of June, 1844, being the owner at the time of his death of a very large estate, consisting of real estate and personal property, and leaving a last will and testament; he left him surviving two sons, James S. and William W., a daughter, Elizabeth, and a grandson, Martin Brimmer, Jr., the only issue of his deceased daughter Harriet.

The will gave to the testator's two sons each one-quarter of the estate, both real and personal. It also created two trust estates, each consisting of one-quarter of the estate, real and personal. One of these trusts was in favor of testator's daughter Elizabeth, and the other for the benefit of Martin Brimmer, Jr., his grandson.

The trustees designated to execute these trusts were Martin Brimmer, the son-in-law, and James S. Wadsworth and William W. Wadsworth, the sons of the testator.

Martin Brimmer, Jr., was entitled to the rents, profits and income of the real estate embraced in the trust for his benefit during his natural life.

The disposition of the real estate and its proceeds in the trust after the death of Martin Brimmer, Jr., was as follows: " And in case the said Martin Brimmer, Jr., shall die leaving lawful issue him surviving, such issue shall take an estate in fee in the real estate hereby devised in trust for him, and the entire and absolute estate and interest in such accumulations as are hereinbefore provided for. And in case the said Martin Brimmer, Jr., shall die, leaving no lawful issue him surviving, then, and in that case, the estate in said lands, and the entire and absolute estate and interest in such accumulations, shall descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made, and the said Martin Brimmer, Jr., had died without issue before my decease."

The personal property embraced in this trust vested in the beneficiary on his attaining the age of twenty-one years.

At the time of testator's death in 1844, his grandson, Martin Brimmer, Jr., was a minor, and his daughter Elizabeth was unmarried. Elizabeth, in 1850, married Charles Augustus Murray, a subject of Great Britain, and died intestate in 1851, leaving her surviving an only son, Charles James Murray, one of the defendants, who is an alien, and one of the appellants here.

Martin Brimmer, Jr., survived until January, 1896, a period of fifty-two years after the death of testator.

The first and important question in this case is to determine who are the heirs at law referred to by the testator as being the remaindermen entitled to the real estate embraced in this trust upon the death of Martin Brimmer, Jr., the life tenant.

It is insisted on the part of the respondents that the language already quoted from the Brimmer trust is clear, accurate and needs no construction ; that the heirs at law designated were those who answered that description at the time of testator's death.

On behalf of the appellant Charles James Murray, it is urged that he is entitled, as devisee, to one-third of the property held in trust for the benefit of Martin Brimmer, Jr., during his lifetime, he being one of the class of persons designated as heirs at law of testator. In other words, that the heirs at law of the testator are to be ascertained as of the time of the death of Martin Brimmer, Jr., and that Charles James Murray takes the entire share of his deceased mother, Elizabeth, the daughter of testator.

The appellant starts out with the proposition that, there being no specific intent expressed, the court must apply the settled rules of construction, and construe the will in accordance with the dictates of reason and justice, imputing to the language of testator such a meaning as, under all the circumstances, will conform to his probable intention.

We are of opinion that no such situation is presented ; the language of the will is clear and the meaning of the testator very obvious. When he states that if Martin Brimmer, Jr., dies without issue the property " shall descend to and vest in

my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease," there is no reason for misapprehending the precise meaning of the testator. If Martin Brimmer, Jr., had died before the testator in 1844, and the latter had made no will, it is clear that his only heirs at law in that situation would have been his two sons, James S. and William W., and his daughter, Elizabeth.

When the testator employs language that is clear, definite and incapable of any other meaning than that which is conveyed by the words used, there is no reason for resorting to the rules of construction that are invoked in the case of ambiguous wills.

The counsel for the respondents have cited many cases in England, in this state and other states which follow the well-settled general rule that where, on the termination of a life estate, a remainder is limited to the heirs of the testator, the will is deemed to speak as of the time of his death, and his heirs at that time take a vested remainder.

We are of opinion that there is no occasion to resort to this rule, and we place our decision on the intention of the testator, manifested by language that requires no construction.

It, therefore, follows that upon the death of the testator the remainder under the Brimmer trust vested in the testator's two sons and one daughter, subject to being divested if Martin Brimmer, Jr., died leaving issue.

This vested estate was descendible, devisable and alienable. (1 R. S. 725, § 35.)

The daughter, Elizabeth Murray, was, therefore, seized of one-third of the estate in remainder at the time of her death in 1851, seven years after her father's decease, and it descended to her brothers, James S. and William W., and to her nephew, Martin Brimmer, Jr., the son of her deceased sister, Harriet, as her own son was an alien and could not, at that time, take by descent.

The appellants argue that by the provisions of James Wads-

worth's will his intention was clear to cut off Martin Brimmer, Jr., from receiving any portion of his estate. We regard those provisions as simply a declaration by the testator that his heirs at law at the time of his death were to become seized of the contingent estate in remainder under this trust and ultimately of an absolute estate if Martin Brimmer, Jr., died without issue. It was in no sense an exclusion of Martin Brimmer, Jr., from any share in testator's estate as an heir at law of his aunt Elizabeth.

It is also urged by the appellants that the testator did not intend to disinherit the child of his only surviving daughter. The obvious answer to this suggestion is that the testator could not have anticipated that his daughter, who, at the time of his death, was unmarried and a member of his household would marry an Englishman and thus bring into the settlement of his estate the question of alien issue.

We have carefully considered the able and learned briefs submitted on behalf of the appellant Charles James Murray, but our reading of the will of James Wadsworth renders it unnecessary, as before stated, to deal with those questions resting upon the assumption that there is no specific intention of the testator expressed in the instrument.

We agree with the learned Appellate Division that the appellant Charles James Murray is entitled to no interest in the property held in trust under the will of James Wadsworth deceased.

The further questions in this case arise on two separate appeals, one taken by Charles F. Wadsworth and his only living issue, Mary W. Wadsworth (now Chandler), and the other by the defendants James W. Wadsworth and others, as trustees of the " Sons' Trusts " under the will of James S. Wadsworth, deceased.

These appeals involve the disposition to be made of the proceeds of sales of real estate made from time to time by the trustees of the trust in which Martin Brimmer, Jr., was beneficiary under the will of his grandfather, James Wadsworth.

It appears by the report of the referee, who was appointed

to state the accounts of this trust as of the time of the death of the beneficiary on the 14th day of January, 1896, that the real estate amounted to $409,312.90, and the personal property to $374,473.85.

It is admitted that of this personalty $3,378.31 was derived from the sale of lands in Monroe and Livingston counties, between the year 1855 and the death of James S. Wadsworth, and that $62,889.04 was realized from the sale of similar lands after the death of James S. Wadsworth. The distribution of these two amounts is involved in this action.

The trustees under the Brimmer trust were authorized " to sell and dispose of all or any part of the said real estate herein devised to them in trust,   *   *   *   and to invest the proceeds in the same manner that they are hereinbefore authorized to invest the proceeds of the real estate conveyed to them in trust for my daughter Elizabeth, to be held by them upon the same trusts and to descend, go and be disposed of in the same manner that the same would have been held, descended, gone and been disposed of if the said real estate had not been so sold."

The manner in which the proceeds of the sale of real estate were authorized to be invested under the trust for testator's daughter Elizabeth was as follows : " To invest the proceeds of such sale or sales in other lands lying in the State of New York, or to invest them in the state stocks of this state, or of the United States, or in bonds secured by mortgages upon real estate lying in this state, or to invest such proceeds in part in such lands, in part in such stocks and in part in such bonds secured by mortgages, the amount to be invested in each to be at the discretion of such trustees."

If the proceeds of sale are to be regarded as real estate, they will, as the appellants claim, constitute a portion of the " Sons' Trusts " under James S. Wadsworth's will. And if they are personal property, as the respondent insists, they will pass under the provisions of said will disposing of the testator's personal property, which would be one-half absolutely to his sons and the other half as part of the *corpus* of the " Daughter's Trust."

The foundation of the argument advanced by the appellants, to the effect that the proceeds of these real estate sales are to be regarded as real estate for all purposes, rests on that provision of James Wadsworth's will dealing with the proceeds of sales that he had authorized, to the effect that they were " to be held by them upon the same trusts, and to descend, go and be disposed of in the same manner that the same would have been held, descended, gone and been disposed of if the said real estate had not been so sold."

The contention is that this provision affixes to these proceeds the fictitious character of realty until they are finally distributed at the termination of the Brimmer trust.

The will of James Wadsworth was admitted to probate in 1844, and for fifty-two years the investment and reinvestment of the trust was conducted by the trustees under its provisions.

The reference that the testator made in defining the powers of these trustees under the trust he had created in favor of his daughter Elizabeth, shows conclusively that he did not intend to treat the proceeds of real estate sales as realty, but on the contrary vested his trustees with the most ample powers as to the manner in which the moneys should be invested.

The particular clause relied upon, and above quoted, must be read in connection with this authority bestowed upon the trustees as to investments.

When the testator stated that notwithstanding these changes of investments his estate should descend, go and be disposed of as if there had been no sales, he was simply impressing the fact upon those who should come after him that he did not intend to vary the ultimate disposition he had made of the *corpus* of the Brimmer trust. He had provided that it should " descend to and vest in my heirs at law in the the same manner as it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease." In other words, the principal of the trust must go in one of two ways, either to Brimmer's issue or to testator's heirs existing at the time of his death.

The clause so relied upon by the appellants is given full force and effect by securing the above result, and to hold that James Wadsworth intended to follow the vested remainders after they had passed to his heirs at law seems a strained and unnatural construction, and inconsistent with the ample discretion with which the trustees were clothed as to reinvestments.

We are of opinion that a proper construction of the will of James Wadsworth leads to the conclusion that the proceeds of real estate sales involved in this action are personal property and pass under James S. Wadsworth's will as such.

The remaining question is as to whether the executors and trustees of Martin Brimmer's estate and the representatives of Craig Wadsworth's children are entitled to all the property which comes to Charles F. Wadsworth from his father, James S. Wadsworth, deceased.

It may be noted here that Charles F. Wadsworth died in November, 1899, a few days before the argument in this court, and his widow, as executrix of his will, stands in his place upon the record.

In 1872, Charles F. Wadsworth was adjudged a bankrupt and his interests in his father's estate were transferred by Frederick Buell, the grantee of his assignee in bankruptcy, to James W. Wadsworth individually and Martin Brimmer individually, the last named two individuals and Charles F. Wadsworth being the executors and trustees under the will of James S. Wadsworth, deceased.

In an action in the Supreme Court, Livingston county, for an accounting, in which Martin Brimmer individually and as executor of and trustee under the last will and testament of James S. Wadsworth is plaintiff, and Charles F. Wadsworth and others were defendants, and in which judgment was entered on the 25th of June, 1887, it was adjudged " that by deed bearing date the 26th day of December, 1873, made by Frederick Buell to the said defendant James W. Wadsworth and said plaintiff, Martin Brimmer, mentioned in said report, the said James W. Wadsworth and Martin Brimmer became and have since been and now are the owners of and entitled

in their own right to all the right, share and interest of the
defendant, Charles W. Wadsworth, of, in and to the estate and
property, real and personal, of the said James S. Wadsworth,
deceased."

By this judgment Martin Brimmer also recovered three
money judgments against Charles F. Wadsworth, aggregating
$138,414.26, and Hezekiah Allen, as sole surviving execu-
tor of the estate of Craig Wadsworth, deceased, recovered
like judgments; these judgments aggregate in principal
$276,828.52 and interest due thereon from May 1st, 1896,
according to the report of the referee.

These judgments were recovered against Charles F. Wads-
worth by his co-executors and trustees under his father's will
to compel him to make good to them losses sustained by his
father's estate for which he was liable. Mary W. Wadsworth
(now Chandler) was a party to this action.

Counsel for Charles F. Wadsworth now insists that the
deed from his assignee in bankruptcy to Buell is void for
uncertainty in describing the property conveyed by it, as
" all the interest that the said Charles F. Wadsworth had on
the 9th day of July, 1872, in the estate of his father,
James S. Wadsworth, the same being the undivided one-sixth
part thereof."

The answer to this contention is, that the effect of this
deed has been adjudicated, as before stated, and the judg-
ment is binding on Charles F. Wadsworth and Mary W.
Wadsworth. Furthermore, if the deed were void, it would
not benefit Charles F. Wadsworth, but would place title in
his assignee in bankruptcy.

In *Chautauque County Bank* v. *White* (6 N. Y. 236) it
was held that an assignment to a receiver of all the debtor's
real and personal estate conveyed his lands in this state with-
out any specific description of them. (See, also, *Sanders* v.
*Townshend*, 89 N. Y. 623.)

The judgment is, however, conclusive in this action, as it
was before the Special Term judge when he decided this case
and also handed up on the argument in this court.

37

We thus reach the conclusion that the interest of Charles F. Wadsworth in the estate of his father, James S. Wadsworth, has been effectually disposed of as found by the court below.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.