### PAYNE *v.* BROWN, administrator, *et al.*

1. "The law favors the vesting of remainders in all cases of doubt. In construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary appears." Civil Code (1910), § 3680.
2. A devise of realty for life, with remainder to testator's "lawful heirs," vests the remainder in those answering such description at the time of testator's death, unless the will evidences a manifest intention to the

---

Wills, 40 Cyc. p. 1386, n. 85; p. 1388, n. 90; p. 1394, n. 24; p. 1620, n. 69; p. 1666, n. 15, 16; p. 1667, n. 18; p. 1675, n. 63.

contrary, though the life-tenant is one of the class who will take the remainder. In the present case the will does not evidence any manifest intention contrary to the general rule.

3. The court having construed the will and rendered a judgment contrary to the principles stated in the preceding headnotes, the judgment was error.

No. 5812. APRIL 16, 1927.

Petition for direction. Before Judge J. B. Jones. Hall superior court. December 16, 1926.

*E. D. Kenyon,* for plaintiff in error.

*B. P. Gaillard Jr., Davie & Reid,* and *J. B. G. Logan,* contra.

GILBERT, J. J. W. Brown, administrator de bonis non cum testamento annexo of John Brown, deceased, filed a bill praying for an order and decree instructing him how he was to disburse among heirs at law and legatees the proceeds of the sale by him of certain lands devised by the will of said deceased. Defendants to the petition are Mary Payne, and others, grandchildren of John Brown. Answers were filed, but the case was submitted to the judge upon an agreed statement of facts, the essential part of which is as follows: John Brown died leaving a will, a true copy of which is attached to the petition as an exhibit. At his death there were in life all of his children, John, Samuel, Elizabeth, Disey, and Charlton Brown and Nancy Ferguson. Under the will testator left a life-estate to said Elizabeth, Disey, Nancy, and Charlton, after whose deaths the lands were to be sold and the proceeds equally divided between testator's lawful heirs. Nancy Ferguson died leaving one child, Mary Payne. The other life-tenants died prior to the death of Nancy Ferguson, but leaving no children, having never married. However, Samuel Brown died leaving six children who are defendants to this proceeding. John Brown, another son of testator, died leaving eight children, also defendants, after having executed and delivered to J. H. Brown, his son, a deed to his remainder interest in testator's estate. The will was probated in 1878, but no one qualified as executor or administrator. In 1910 J. W. Brown, a grandson of testator, qualified as administrator cum testamento annexo. After Nancy Ferguson, the last life-tenant, died in 1923, said administrator sold the property involved for the sum of $3035, which sum he held subject to the order of court for which he prayed. All testator's grandchildren were of age and made parties. All his children were dead. Item 3 of the will is as follows: "I give and be-

queath to my daughters, Elizabeth Brown, Disey Brown, Nancy Ferguson, and my son Charlton, all my land known as lot of land No. sixty-one in the twelfth district of Hall County, being the place whereon I now live, to have, hold, improve, live on, and enjoy as long as they all shall live, said land not to be partitioned or sold or conveyed by either of them; after the death of my daughters Elizabeth, Disey, and Nancy, and my son Charlton, said lands are to be sold and the proceeds to be equally divided between my lawful heirs."

The court rendered the following judgment and decree: "The above-stated matter was submitted to the court without the intervention of jury, all questions of fact being agreed upon by counsel for the parties at interest; and after hearing argument of counsel for the parties, and it appearing from the will and statement of facts agreed to that John Brown, the deceased testator, by will devised to his son, Charlton Brown, Disey Brown, and Mrs. Nancy Ferguson a life-estate in all the property of the testator, to be used jointly by them without partition, sale, or division, during the life of any one of the said life-tenants, and at the death of the last life-tenant testator directed that the land be sold and the proceeds divided equally between his 'lawful heirs,' that John A. Brown and Samuel Brown, sons of the said testator, were in life at the time of the death of testator; the evidence further discloses that John A. Brown after the death of his father deeded his remainder interest to J. H. Brown, a son of said John A. Brown: It is thereupon adjudged and decreed by the court that under the will of John Brown, that Charlton Brown, Disey Brown, and Mrs. Nancy Ferguson took a life-estate in the lands devised, with remainder over vested in John A. Brown and Samuel Brown, with possession postponed until the death of the life-tenants, that the remainder vested in the said John A. Brown and Samuel Brown as a class under the language of the will, to wit: 'my lawful heirs,' and that the remainder was such a vested remainder that the remainderman had a right to sell and convey, as the said John A. Brown did by deed to his son, J. H. Brown. It is therefore adjudged and decreed by the court that the interest of the life-tenants ceased at the death of the last life-tenant, and that the possession passed to the remaindermen or their representatives, and that the said Samuel Brown if in life

and John A. Brown if in life would be entitled to the proceeds of the sale. However it appears that Samuel Brown is dead; therefore his heirs at law are entitled to a one-half interest; and John A. Brown having conveyed his remainder interest to J. H. Brown, the said J. H. Brown is entitled to the one-half interest of the said John A. Brown. It is ordered, adjudged, decreed, and directed by the court that the proceeds from the estate of the said John Brown, deceased, be paid out as follows: first pay all the costs of administration and the costs of this proceeding; second, from the residue pay one half to the heirs at law of Samuel Brown, per stirpes, and one half to J. H. Brown, standing in the place of his father, John A. Brown, the grantor of the deed from the said John A. Brown to J. H. Brown." Mary Payne, complaining that the above decree excluded her from participating in the estate, excepted thereto and assigned error.

1, 3, 4. The first, third, and fourth headnotes do not require elaboration.

2. Counsel for both plaintiff in error and defendants in error insist that in the construction of wills the intention of the testator controls. With that contention the court is in entire accord. Our Code so declares. Civil Code (1910), § 3900. It was the law before there was a Code. We are therefore unanimous on that principle. Judge Nisbet, speaking for the court, said: "The first thing to be ascertained, in the construction of a will, is the intention of the testator. In the language of the books, that is the polar star. The intention is imperative on the courts, unless it is in conflict with some established rule of law. If it is, the law is more imperious than the intention, and the latter will yield to the former. The law, though, in order to defeat the intention, must be clearly and decidedly in conflict with it. The courts will studiously give effect to the intention, unless constrained by the law to disregard it. No man's will is so high in its obligations upon the courts as the laws of the land. If the intention could prevail against the law, then the will of a testator would make or repeal the law. The effect would be that there would be no law to regulate the transmission of property by will. The intention is to be ascertained, primarily, from the will itself. That is, generally, the highest and best evidence of it. In most cases, it is the *only* evidence. The testator having *written* his will, the

writing is the *exponent* of his intentions, and if that is clear—if, in the will itself, there is no ambiguity,—it is solemnly obligatory upon the court, and it can resort nowhere else." *Williams* v. *McIntyre,* 8 *Ga.* 34, 36.

We find no ambiguity in the terms of the will. The intention, therefore, will be gleaned from the will itself. The rights of the parties are controlled by a question of law. The decision of the trial judge, as it appears from the views stated in connection with his judgment, was based upon the theory that, under a will, one to whom a life-estate is devised could not, under such will, take a remainder interest in the same property, devised to "lawful heirs," though the life-tenant be one of the class constituting "lawful heirs." Therefore, the child of the life-tenant not being one of the lawful heirs of the testator, and her mother's interest in the estate being confined to a life-tenancy and not extending to any remainder interest, the child (grandchild of testator) took no part in the remainder interest. The important question, therefore, is whether one may take under a will a life-estate and at the same time a remainder interest. It may be argued that it is incongruous, illogical, and impossible for a life-tenant to possess and enjoy a remainder interest which is to follow such life-estate. We see no incongruity in this. The law quoted in the first headnote is well settled in this State; that is, the remainders vested on the death of the testator. The will took effect then. We have also ruled that the will under construction in this case does not manifest any intention of the testator to postpone the vesting of the remainder to any deferred date. Hence it follows that on the death of the testator the remainder interests devised were vested in the children, all of whom, including the life-tenants, were then in life. The life-tenant Mrs. Ferguson, mother of the defendant Mary Payne, being in life when the testator died, took a life-estate and a portion of the remainder. The fact that she could not enjoy and possess the remainder, because the remainder interests were not to be distributed until the death of the last life-tenant, furnishes no reason why she did not take a vested title to such remainder interest. Although she could not herself possess and enjoy such remainder, it constituted property such as Mrs. Payne could sell and convey. One of the remaindermen did in fact sell his remainder interest to his son. She could transmit by will

also; and on failure to do either, the interest descended under the rules of inheritance to her heirs. In fact the same situation exists as in the case of the use and occupancy of lands held in fee simple. The death of such owner ends his use and occupancy. But during his life he may sell and convey, devise, or permit his heirs at law to inherit. The life-tenants were also lawful heirs. *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134); *Bowen* v. *Driggers,* 138 *Ga.* 398 (75 S. E. 318); *Hill* v. *Hill,* 161 *Ga.* 356 (130 S. E. 575). In Himmel *v.* Himmel, 294 Ill. 557 (128 N. E. 641, 13 A. L. R. 608), will be found a learned opinion by Chief Justice Cartwright, dealing with this question. In the American Law Report cited appears an elaborate note to this case, and this annotation affords quite a satisfactory collection of authorities. The note itself states its purpose to be to deal with the very same principle with which we are now confronted. The opinion declares that "It is the established law of this State that where a life-estate is devised to one of several heirs at law of the testator, with remainder to his heirs at law, the life-tenant is included within the term 'heirs at law,' and is included in the devise of the remainder." The copious A. L. R. note furnishes us the following list of authorities on the point, American, Canadian and English: Kellett *v.* Shepard (1891), 129 Ill. 443, 28 N. E. 751, 34 N. E. 254; Henkins *v.* Henkins (1919), 287 Ill. 62, 122 N. E. 88; Childs *v.* Russell (1846), 11 Met. (Mass.) 16; Abbott *v.* Bradstreet (1862), 3 Allén (Mass.), 587; Minot *v.* Tappan (1877), 122 Mass. 535; Keniston *v.* Mayhew (1897), 169 Mass. 166, 47 N. E. 612; Leonard *v.* Haworth (1898), 171 Mass. 496, 51 N. E. 7; State Street Trust Co. *v.* Sampson (1917), 228 Mass. 411, 117 N. E. 832; Schlater *v.* Lee (1918), 117 Miss. 701, 78 So. 700; Simes *v.* Ward (1918), 78 N. H. 533, 103 Atl. 310; Tuttle *v.* Woolwroth (1901), 62 N. J. Eq. 532, 50 Atl. 445; Stewart's Estate (1892), 147 Pa. 383, 23 Atl. 599; Bache's Estate (1914), 246 Pa. 276, 92 Atl. 304; Tatham's Estate (1915), 250 Pa. 269, 95 Atl. 520, Ann. Cas. 1917A, 855; Garner *v.* Lawson (1803), 3 East, 278, 102 Eng. Reprint, 604; Wharton *v.* Barker (1858), 4 Kay & J. 483, 70 Eng. Reprint, 202, 4 Jur. N. S. 553, 6 Week. Rep. 534; Bullock *v.* Downes (1860), 9 H. L. Cas. 1, 11 Eng. Reprint, 627; Southgate *v.* Clinch (1858), 27 L. J. Ch. N. S. (Eng.) 251, 4 Jur. N. S. 428, 6 Week. Rep. 489; Holloway *v.* Holloway (1800),

31 Eng. Reprint, 649, 5 Ves. Jr. 399, 5 Revised Rep. 81, 25 Eng. Rul. Cas. 687; Seifferth v. Badham (1846), 9 Beav. 370, 50 Eng. Reprint, 386, 15 L. J. Ch. N. S. 345, 10 Jur. 892; Brabant v. Lalonde (1895), 26 Ont. Rep. 379.

We think it unnecessary to quote from these decisions, but add to them the following:   Allen v. Almy, 87 Conn. 517 (89 Atl. 205, Ann. Cas. 1917B, 112) ; Wood v. Bullard, 151 Mass. 324 (25 N. E. 67, 7 L. R. A. 304) ; Clark v. Mack, 161 Mich. 545 (126 N. W. 632, 28 L. R. A. (N. S.) 479n) ; Wadsworth v. Murray, 161 N. Y. 274 (55 N. E. 910, 76 Am. St. R. 265) ; In re Tucker, 63 Vt. 104 (21 Atl. 272, 25 Am. St. R. 743) ; Allison v. Allison, 101 Va. 537 (44 S. E. 904, 63 L. R. A. 920).

*Judgment reversed.   All the Justices concur.*