In the Matter of Proving the Will of CHARLOTTE A. MOUNT, Deceased.

MARIA L. MOUNT et al., Appellants; JOSEPH M. ADRIAN et al., as Executors, Respondents.

1. SURROGATE'S DISCRETION — POWER TO RESERVE DECISION OF QUESTION RAISED IN PROCEEDINGS CONTESTING PROBATE OF WILL. Section 2624 of the Code of Civil Procedure, relating to the validity and construction of testamentary provisions, is not mandatory, so that under its terms the surrogate is required to consider and determine every question which may be raised by any of the parties as to the construction or validity of the will; he may in his discretion properly reserve or postpone the consideration of such questions until they actually arise and their determination becomes necessary to a proper disposition of the estate.

2. JUSTIFIABLE EXERCISE OF DISCRETIONARY POWER. The provisions of a will examined, and existing circumstances considered, in proceedings for the probate of a will disposing of personal property, attacked as invalid as constituting an unlawful suspension of the power of alienation, in which the surrogate sustained a trust in favor of a life beneficiary

but refused to determine the validity of provisions disposing of the corpus after the death of such beneficiary, upon the ground of uncertainty as to the parties entitled to inherit, and held, that his discretion was properly exercised in not determining such questions in advance.

*Matter of Mount*, 107 App. Div. 1, affirmed.

(Argued April 26, 1906; decided May 8, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 26, 1905, which affirmed so much of a decree of the New York County Surrogate's Court admitting the will of Charlotte A. Mount, deceased, to probate as adjudged certain trusts created thereby to be valid and refused to determine the validity of other trusts created by the residuary clause of such will.

*W. H. Hamilton* and *Warren McConihe* for appellants. This trust is void as suspending the absolute ownership of the personalty for a period not measured by any one life or any two lives in being at the death of the testatrix. (*Sawyer* v. *Cubby*, 146 N. Y. 196; 1 Thomas on Estates, 888; *Schettler* v. *Smith*, 41 N. Y. 328; *Purdy* v. *Hayt*, 92 N. Y. 446; *Jennings* v. *Jennings*, 7 N. Y. 548; *Haynes* v. *Sherman*, 117 N. Y. 433; *Dana* v. *Murray*, 122 N. Y. 617; *Greenland* v. *Waddell*, 116 N. Y. 234; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Knox* v. *Jones*, 47 N. Y. 389.) The raising of this question at this time is not premature and these next of kin are entitled to know their rights — now. (Code Civ. Pro. § 2624; *Matter of Trotter*, 182 N. Y. 465; *Matter of Vowers*, 113 N. Y. 569; *Matter of Austin*, 35 App. Div. 281; *Matter of Knoblauch*, 31 Misc. Rep. 418; *Matter of Hall*, 30 Misc. Rep. 281; *Matter of Robertson*, 23 Misc. Rep. 453; *Kirk* v. *Kirk*, 137 N. Y. 512; *Kent* v. *Church of St. Michael*, 136 N. Y. 10; *Jones* v. *Hamersley*, 4 Dem. 427; *Rhodes* v. *Caswell*, 41 App. Div. 229; *Fox* v. *Fee*, 24 App. Div. 324.)

*Charles F. Brown* and *Charles S. Martin* for respondents. The gifts to the children of Richard H. Mount living at the

death of the testatrix and to their issue are valid. (*Manice
v. Manice,* 43 N. Y. 304 ; 1 R. S. 723, §§ 14, 15.) The gift
to the lawful issue collectively of each of the children of
Richard H. Mount who might die before Susan Mount leav-
ing such issue is valid. (*Gilman* v. *Reddington,* 24 N. Y.
13 ; *Harrison* v. *Harrison,* 36 N. Y. 543 ; *Manice* v. *Manice,*
43 N. Y. 303 ; *Purdy* v. *Hayt,* 92 N. Y. 446 ; *Dana* v.
*Murray,* 122 N. Y. 604 ; *Durfee* v. *Pomeroy,* 154 N. Y. 583 ;
*Stoiber* v. *Stoiber,* 40 App. Div. 156.) The illegal provision
in favor of after-born children of Richard H. Mount does not
destroy the other valid trusts created by and contained in the
will of the testatrix. (*Van Vechten* v. *Van Vechten,* 8 Paige,
105 ; *Savage* v. *Burnham,* 17 N. Y. 562 ; *Harrison* v. *Har-
rison,* 36 N. Y. 543 ; *Manice* v. *Manice,* 43 N. Y. 303 ; *Van
Schuyver* v. *Mulford,* 59 N. Y. 426 ; *Knox* v. *Jones,* 47 N. Y.
389 ; *Benedict* v. *Webb,* 98 N. Y. 460 ; *Kennedy* v. *Hoy,* 105
N. Y. 135 ; *Kalish* v. *Kalish,* 166 N. Y. 374 ; *Smith* v.
*Chesebrough,* 176 N. Y. 317.)

CULLEN, Ch. J. The appellants are certain of the next of
kin of Charlotte A. Mount, who died in the city of New
York, March 27th, 1904, leaving a last will and testament.
On the proceedings for the probate of the will the appellants
put in issue the validity, construction and effect of the dis-
position of the testatrix's personal property contained in the
following provision : "*Ninth.* I give, devise and bequeath
all the rest, residue and remainder of my estate, real and
personal of what nature and kind soever, and wherever
situated to my executors who shall qualify as such under
the Thirteenth clause of this my will as trustees upon the
following trusts :

"To lease and manage the real estate, to invest and reinvest
the personal estate, to collect and receive the rents, the inter-
est and income of such real and personal estate, and to pay
over to my sister Susan, the entire net amount of such rents,
interest and income during the term of her natural life.
Immediately after the death of my said sister, my said execu-

tors or the survivors of them as such trustees shall divide the said residuary estate (real and personal) into as many shares of equal value as will make one for each of the children then living of my nephew Richard H. Mount and one for the lawful issue collectively, of each of the children of my said nephew (if any) who may then have died leaving such issue, and shall set apart one of such shares to each child then living, and one to such issue collectively of each deceased child, which shares shall be designated as the property of such parties respectively and my executors shall keep separate accounts of such respective shares.

"My said executors as such trustees shall pay over to the children of my said nephew if then of the age of twenty-five years otherwise on their arriving at that age the net income of the shares so set apart for them respectively during the period of their respective lives and after their deaths respectively they shall distribute and pay over such shares to the issue of such children respectively in equal portions *per stirpes*.

"My said executors and trustees shall pay over to and distribute among the issue of any deceased child or children of my said nephew who shall at the death of my said sister Susan be of the age of twenty-five years, otherwise as soon as they respectively attain that age their respective portions of the share so set apart to such issue collectively."

The answers of the appellants charge that the entire disposition is void as suspending the absolute ownership of personal property for lives not necessarily in being at the testator's death. The surrogate made a decree sustaining the trust for the sister during life, but refusing to determine the validity of the provisions disposing of the estate after the death of the sister on the ground, as stated in the decree, "owing to the uncertainty as to who will be entitled to inherit the estate after the death of the said Susan Mount, and the fact that no decision can now be made thereupon except at the hazard of adjudicating upon the rights of persons who are not parties to the present proceeding and that no present

necessity requires that any decision thereupon be now made."
From the affirmance of that decree by the Appellate Division
this appeal is taken.

Though the appeal to the Appellate Division was from the
entire part of the surrogate's decree which deals with the
construction and validity of the will, it is substantially con-
ceded that the trust for the testator's sister is valid. It is
contended, however, that all the dispositions of the property
subsequent to the death of the sister, with the possible excep-
tion of the alternative gift in a single contingency, are illegal
and void, that the remainder subject to the life estate of the
sister vested in the next of kin of the testatrix, and that the
appellants were entitled to have the surrogate so hold and
adjudge.

Section 2624 of the Code of Civil Procedure provides:
" If a party expressly puts in issue, before the surrogate, the
validity, construction, or effect of any disposition of personal
property, contained in a will of a resident of the state, executed
within the state, the surrogate must determine the question
upon rendering a decree; unless the decree refuses to admit
the will to probate, by reason of a failure to prove any of the
matters specified in the last section." It is insisted that this
language is mandatory ; that under the terms of the section
the surrogate is required to consider and determine every
question which may be raised by any of the parties as to the
construction or validity of the will, and that he is without
power to reserve or postpone the consideration of such ques-
tions until they actually arise and their determination becomes
necessary to a proper disposition of the estate. We think
that no such interpretation should be given to the section.
The authority of the surrogate rests wholly upon statute. In
1870 (Ch. 359) the power was conferred upon the surrogate
of the city and county of New York. By the Code of
Civil Procedure it is conferred upon all surrogates in the
state. Before these statutory enactments, while the surro-
gate necesssarily had jurisdiction, for the purposes of dis-
tribution, to construe a will and decide on the validity of

its provisions (*Matter of Verplanck*, 91 N. Y. 439), he had no power in advance of distribution or directions for payments from the estate, to adjudicate the effect or validity of the will. Actions for the construction of a will could. be maintained only in courts of equity as ancillary to their jurisdiction over trusts, and the right to maintain such suits was subject to limitations and qualifications dependent on the nature of the testamentary disposition and the attitude of the party invoking the court's action. (*Chipman* v. *Montgomery*, 63 N. Y. 221; *Wager* v. *Wager*, 89 id. 161.) The intention of the Code provision was to confer upon the surrogate power and jurisdiction similar to that theretofore possessed by courts of equity. In one respect it is probably a little broader, because a court of equity would not entertain an action brought by one claiming the legal title in unqualified hostility to the will, while the Code provision requires. the surrogate to determine the validity of the testamentary disposition when challenged, as well as the construction of the will. · Still this does not deprive the surrogate of the discretion possessed by a court of equity to refuse to decide questions which may never be presented by actual conditions or occurrences. This view as to the effect of the Code provision was held by the late Surrogate ROLLINS in *Jones* v. *Hamersley* (4 Dem. 427), and the reasons for such conclusion are very clearly and cogently stated in the opinion rendered by him in that case. As to the rule prevailing in a court of equity, it is necessary to refer to but a single decision in this court, that of *Horton* v. *Cantwell* (108 N. Y. 255). The court there refused to determine whether the plaintiff was entitled to a remainder in the estate on certain contingencies which might or might not occur. It was said: "Upon the whole case we think there is no practical or present controversy to be determined, and the contingency may never arise in which the question can become a practical one, and even then if it do hereafter arise, there is no certainty there will be any contest whatever in regard to it. At any rate the matter is, so far as the plaintiff is concerned, a purely abstract one, and the

courts do not sit to determine abstract questions." While it is true that in proper cases the judgment of a court will conclude the rights of persons not in being at the time the judgment is rendered, there certainly is no impropriety in a court refusing to determine such rights when present conditions do not require it or render such determination advantageous to the disposition of the estate.

We are now brought to a consideration of the existing circumstances in the present case, and to some extent to the construction and validity of the will (although in these latter respects our determination cannot be conclusive on the parties), in order that we may determine whether the discretion of the courts below was justifiably exercised, in withholding a determination of the questions the appellants sought to have adjudicated. The testator's sister is now seventy-six years old. The testator's nephew, Richard H. Mount, is over fifty years old. He had at the execution of the will two children who still survive, Edward, now aged 30, and Harold aged 23. His wife, the mother of these two children, is still living. The elder son is married, and pending this appeal has had a child born. The younger is unmarried. Bearing in mind the age of his wife and that of the children, the strong probability is that Richard Mount will have no other children by his present wife. She may die, he may marry again and have children. But for such an event to have any bearing on the present controversy the child must be born before the present equitable life tenant, a lady seventy-six years old, dies. Therefore, the chances are decidedly against such an occurrence. If it does not happen, and the two sons of the nephew now living survive their grandaunt, there will be only a single question to determine : that is, whether the direction in the will to divide the corpus into shares for all the children of the testatrix's nephew, which would include children who might be born after her death, renders the provision, so far as it applies to children living at her death, illegal and void. If this provision is valid as to those children, no other question can arise under the will, because the remainders given on the death of

those children are clearly good.   We are inclined to the view that this question is a comparatively simple one.   It is true that in determining the validity of a trust and whether testamentary dispositions contravene the statute forbidding the suspension of the absolute ownership of personal property for more than two lives in being, we must consider not what has actually happened since the death of the testator, but what might have happened.   " It is not sufficient that the estate attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency they will absolutely terminate at such period, or such estates will be held void. (*Schettler* v. *Smith*, 41 N. Y. 328.)   The trust for the testator's sister suspends absolute ownership for her life.   If the trust was to continue *in solido* for the benefit of all the nephew's children who might survive their grandaunt, it would be void, not only because it might depend on lives not in being at the death of the testatrix, but also because its continuance might last over a greater number of lives than that prescribed by the statute.   But on the death of the sister the corpus is to be divided into several shares according to the number of children the nephew may then have, including the issue of any deceased child.   The trust as to each share terminates with the life of the beneficiary.   Therefore, as to the share of a child of the testatrix's nephew living at her death the suspension is for two lives authorized by statute, to wit, the testatrix's sister, and the equitable life tenant of the particular share.   It matters not that the whole corpus is not released at the termination of any two specified lives.   An entire estate may be held in trust for one beneficiary for life, and on his death may then be divided into shares, each of which may be held in trust for a second separate life. (*Moore* v. *Hegeman*, 72 N. Y. 376 ; *Wells* v. *Wells*, 88 id. 323 ; *Vanderpoel* v. *Loew*, 112 id. 167.)   It is not at all necessary that the testator create a single trust in a single

piece of property. He may create separate trusts in undivided interests. The validity of each of such trusts is dependent solely on its terms, not on the fate or validity of the others. If, therefore, the nephew should have children born after the testatrix's death and surviving her sister, their existence would serve to cut down the shares to be held in trust for the children living at the testatrix's decease. But we do not see how the invalidity of the testamentary disposition in favor of such after-born children can affect the legality of the trust in favor of the existing children. All the probabilities are that this question will be presented for determination on the death of the testatrix's sister, but in the view which we take of it the appellants at least have no just cause of complaint that the judgment below left it open.

Other questions, such as in case of the death of Richard H. Mount before that of Susan Mount, leaving issue then surviving, the validity of the direction that their share shall be paid to such issue only as they respectively arrive at the age of twenty-five years may never arise. So also the provision for accumulation of income beyond the minority of the beneficiaries (a provision not quoted) may never become a practical question. A marked instance of the futility of hoping to decide in advance every question that may occur in the construction of a long and complicated will is shown by the fact that, despite the elaborate discussion in the well-known case of *Manice* v. *Manice* (43 N. Y. 303), over thirty-five years ago, we have but recently had before us another litigation arising out of the construction of the will that was then before the court.

The judgment appealed from should be affirmed, with costs.

Gray, Edward T. Bartlett, Haight, Vann, Willard Bartlett and Chase, JJ., concur.

Judgment affirmed.