In the Matter of the Estate of LEON BARNES, Deceased.

Surrogate's Court, Broome County, April 22, 1935.

*Wales, Riley & Fischette,* for the administrator c. t. a.

*Gertrude R. Keegan Schaefer,* for William B. Barnes and another.

*Charles R. Cohen,* special guardian of Richard Gordon Heath and others, infants.

BAKER, S. The validity of the provisions of paragraph second of the will here under consideration has been attacked upon this

proceeding as violative of section 11 of the Personal Property Law and section 42 of the Real Property Law. The provisions of paragraph fourth of the will, purporting to dispose of the remainder of the trust estate, in the event that certain contingencies, as provided for in the second paragraph of the will, have not been met, also have been attacked as being a disposition of a remainder following invalid trust provisions. Paragraphs second and fourth of the will are as follows:

" *Second.* I give, devise and bequeath to the Brotherhood of Locomotive Engineers Co-operative Trust Company, of the city of New York, all my property, both real and personal and wherever situated or located in trust however for the following uses and purposes, to invest and re-invest,— all my said property and estate, — to the best advantage in first class securities, and from the avails, issues and profits thereof, pay over quarter yearly to my brother William B. Barnes, Edward Barnes and my sister Caroline H. Leete the said increase, issues and profits in equal shares and upon the death of one of the said brothers and sister pay over the said increase, issues and profits to the survivors in equal shares one half each, and upon the death of another of said brothers and sister, then pay over the whole of the said increase, issues and profits to the survivor of them, and upon the death of the survivor of them, pay over the said increase, issues and profits to Clarence T. Heath and Irma H. Perine in equal shares, one-half each, if both be living, if not then the whole to the survivor of them, and upon the death of either of them to the survivor of them and upon the death of the survivor of them then and in that case the body of the trust fund shall be paid over to the heirs at law of the said Clarence T. Heath and Irma H. Perine, provided however that in the event that either of them arrive at the age of fifty years and the said brothers and sister be deceased then and in that event the said trust fund shall be paid over to the said survivor of fifty years of age, but if one be not then dead then one-half of the said trust fund shall be so paid over and the remainder held in trust until both have arrived at the said age of fifty years, then the said remaining one-half shall be turned over to the said person last arriving at the age of fifty years, then the said trust shall cease and determine. This second provision of my will is subject to the payment of the following bequests.

" *Fourth.* In the event that the body of my estate, the said trust, has not been turned over and terminated as hereinbefore provided, then and in that case I give, devise and bequeath the same to the next of kin of said Clarence T. Heath and Irma H.

Perine, and my said trustee is directed to turn over and pay over the said trust fund and estate accordingly."

The testator died May 16, 1932, leaving no widow, and was survived by the following distributees: William B. Barnes, a brother; Edward Barnes, a brother; Caroline H. Leete, a sister; Clarence T. Heath, a nephew; and Irma H. Perine, a niece, the two last named persons being children of Annah Wells Heath, a deceased sister of the testator.

The only children of Clarence T. Heath are Richard Gordon Heath and Barbara Jean Heath, infants under the age of fourteen years. The only child of Irma H. Perine is Robert Heath Perine, an infant under the age of fourteen years.

Neither Clarence T. Heath nor Irma H. Perine are of the age of fifty years.

At the time of the death of the testator, his estate consisted of real and personal property. The real property has been sold by the administrator c. t. a. by virtue of a discretionary power of sale contained in the will.

The will contains no express provision for a division of the trust corpus into separate and independent trusts, one for the benefit of each named brother and/or sister, and it, therefore, becomes the first problem of the court to determine from an examination of the present instrument, and an investigation of pertinent precedents, whether, under the provisions of paragraph second, the principal, as well as the income of the trust fund, shall be divided into separate and independent trusts, though the fund be retained in solido, for mere convenience of investment, or whether a single trust shall be created of the entire corpus.

A review of the language employed by the testator is enlightening. After the direction for the payment of the debts and funeral expenses, as provided in the first paragraph of the instant will, the entire residuary estate is given, devised and bequeathed in trust with a direction to pay over, as indicated, " to my brother William B. Barnes, Edward Barnes and my sister Caroline H. Leete the said increase, issues and profits in equal shares and upon the death of one of the said brothers and sister pay over the said increase, issues and profits to the survivors in equal shares one-half each, and upon the death of another of said brothers and sister, then pay over the whole of the said increase, issues and profits to the survivor of them, and upon the death of the survivor of them, pay over the said increase, issues and profits to Clarence T. Heath and Irma H. Perine in equal shares, one-half each, if both be living, if not then the whole to the survivor of them and upon the death of either of them to the survivor of them and upon the death of

the survivor of them then and in that case the body of the trust funds shall be paid over to the heirs at law of the said Clarence T. Heath and Irma H. Perine."

The latter part of this paragraph contains a provision that in the event the said nephew and/or niece arrive at the age of fifty years and the brothers and sister of the testator be deceased, that one-half of the trust fund shall be paid to him and/or her and the remaining one-half held in trust until both have arrived at the age of fifty years. It is also provided that this provision of the will be subject to the payment of certain general legacies mentioned and set forth in the third paragraph of the will.

It should be noted that every time the words " in equal shares " are used in the second paragraph of the will, they have express reference to the income of the trust fund. Also in the use of the word " whole " the testator has emphasized its application to income only. No disposition of the corpus of the trust fund can be made to the nephew and niece until after the death of the brothers and sister, nor to the heirs at law of the nephew and niece, until after the death of the brothers and sister and the nephew and niece, as expressly stated by the testator.

In *Leach* v. *Godwin* (198 N. Y. 35) the Court of Appeals, in holding that the provisions of the instrument before it presented but a single trust, laid much emphasis upon phraseology similar to that referred to above. In the latter case, Judge CHASE, writing for a majority of the court, stated the rule as follows: " In cases where income *and principal* are given in equal shares out of one fund kept *in solido* for mere convenience of investment separate and independent trusts may be created for the several beneficiaries and the shares and interest will be several even though the fund remain undivided. (*Schermerhorn* v. *Cotting*, 131 N. Y. 48, and cases cited; *Wells* v. *Wells*, 88 N. Y. 323; *Locke* v. *Farmers' Loan & Trust Co.*, 140 N. Y. 135; *Steinway* v. *Steinway*, 163 N. Y. 183; *Savage* v. *Burnham*, 17 N. Y. 561; *Matter of Mount*, 185 N. Y. 162.)

" In cases where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts that each part of the principal fund should be liberated from the trust fund upon the termination of the lives in being at the death of the testator for which the trust is held and also to find from within the will itself that such was the intention of the testator. Thus in *Wells* v. *Wells* (*supra*) the intention of the testator to make separate and independent trusts appeared from the will. This court, referring to such intention, say: ' The testator plainly contemplated a segregation of each share from the general mass upon the death of any child

leaving issue, and a payment over of such share to such issue. Each share in turn will be liberated from the trust upon the death of the parent leaving issue, and the trust as to each share will thus terminate. The utmost period of suspension of the ownership of any part of the estate, will be the lives of the widow and of one child, a period within the statute. The interests carved out of the trust are separate and distinct, and the will is to be construed as though in terms it had created a separate trust for each child and the issue of each child. in one undivided seventh part of the estate ' (p. 333)."

The Appellate Division in the Second Department has rendered two illuminating decisions upon this point. In *Matter of Magnus* (179 App. Div. 359) the testator directed his executor to invest all of his property and to pay the income therefrom monthly in stated proportions to his son, his son's daughter and his son's stepdaughter. In the event of the death of his son, his share of the income was directed to be paid to his two daughters, one-half to each. In the event of the death of either or both of the daughters, without issue, their share of the income was to be paid to the son, and if all of the beneficiaries should die without issue, distribution of the trust fund was to be made to the next of kin, of the testator. At page 360 of the opinion the court stated the principle in the following language: " We are referred to the rule that such trusts for more than one person may be treated as divided into as many parts as there are beneficiaries, so as to prevent a violation of the rule as to perpetuities.

" A theoretical division may be made of the trust estate, where none was expressed, so as to sever the fund, forming a distinct trust for each of the beneficiaries. But in the effort to avoid the effect of the statute, the court cannot rightfully ignore a contrary purpose clearly expressed. To validate such provisions, there must not only be a severance of the trust fund, but if more than two lives are involved, the segregation of shares must be absolute, on the death of any beneficiary, so that such share, both principal and income, is thereby extricated from the trust. As to such separate share, the trust then terminates. (*Wells* v. *Wells*, 80 N. Y. 323. See Thomas Estates Created by Will, 379, § 24.) "

And at page 361: " It is only where income *and principal* are given in equal shares out of a fund kept *in solido* for convenience of investment, that the court can set apart separate and independent trusts for the several beneficiaries, so as to have in an undivided fund separate and distinct shares. (*Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Locke* v. *Farmers' Loan & Trust Co.*, 140 id. 135; *Matter of Mount*, 185 id. 162; *Leach* v. *Godwin*, 198 id. 35, 41.) Otherwise,

on the death of one, its share is *not* segregated from the general mass, with a payment over of the principal of such share, by which its amount then definitely escapes from the trust."

In *Matter of Beale* (213 App. Div. 13) this doctrine is set forth (at p. 17) as follows: " We now have a will in which the testator provides substantially as follows: ' I give and devise all my real and personal estate * * * to * * * my executors * * * in trust, with power to sell * * * and to invest the same and to pay over and apply the rents, issues, incomes and interest and profits arising therefrom and from all my estate equally to the support and maintenance of my three children * * * during their natural lives, and upon the death of either of said children to pay over one-third of the principal sum of my estate to the lawful children or issue of said deceased child, if any.' There is nothing here to indicate that at the outset the estate is to be divided into three parts. The principal sum is to be held intact until the death of one of the children with issue him or her surviving, when one-third thereof is to be lopped off and given to the issue. Nor is there anything to indicate that the provision just referred to is the dominant one, and the offending provision the subordinate. They seem to me to be coequal. The testator contemplated two eventualities: the death of one or more of the children with issue, and the death of one or more of them without issue. One event was as likely to happen as the other, or both might happen. So far the event that has happened is the death of one of the children without issue. If we read into this will an intent to create three separate trusts we shall be doing violence to the rule, equally applicable with the rule in *Matter of Horner* (237 N. Y. 489) and *Matter of Colegrove* (221 N. Y. 455), that the intent of the testator to create separate and independent trusts must be found *within the will itself*. (*Leach* v. *Godwin*, 198 N. Y. 35.) "

From its examination of the instant will, and its investigation of the authorities, this court is convinced that it was the intent of the testator, as expressed in the second paragraph of the will, to create but a single trust. It is so held.

The next question to be answered is whether such trust is violative of the rules against perpetuities.

" To render a trust valid, it must be so limited that in every possible contingency there will be an absolute termination thereof within the period prescribed by statute. (*Herzog* v. *Title Guarantee & Trust Company*, 177 N. Y. 86; *Matter of Wilcox*, 194 N. Y. 288; *Matter of Mount*, 185 N. Y. 162; *Brown* v. *Quintard*, 177 N. Y. 75.) " (*Matter of Hitchcock*, 222 N. Y. 57, at p. 71.)

The validity of a trust " must be determined not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends not on what has happened since the death of the testator, but on what might have happened." (*Matter of Wilcox*, 194 N. Y. 288, 295.)

" In determining the validity of limitation of estates, * * * it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void." (*Schettler* v. *Smith*, 41 N. Y. 328, 334.)

Let us now apply these principles to the instant case. The testamentary intent as here disclosed was the creation of a single trust for the benefit of his brothers and sister for the period of their lives, and continuing in trust for the benefit of his nephew and niece for the period of their lives, effective, however, only upon the death of his brothers and sister, and also contingent upon the nephew and/or niece not arriving at the age of fifty years before the death of the last survivor of the brothers and/or sister.

The trust for the period of three lives, which continues, under certain contingencies, in trust for the period of two more lives, is an entirety, and cannot be avoided in part and sustained in part. All of the beneficiaries are provided for in a single clause of the will, and, in pursuance of a single intent of the testator, all being embraced in a common purpose, the trust violates the statutory prescription and is void in its entirety. (*Knox* v. *Jones*, 47 N. Y. 389.)

There remains for consideration the adjudication as to the disposition of remainders following invalid trust provisions, which consists of the application of recognized rules of law to the dispositive directions, and involves a decision as to how far applicable legal principles will permit effectuation of the devolution desired and expressly or impliedly directed by the testator.

The provisions of paragraph second of this will as to the disposition of the corpus of the trust to the nephew and niece was effective only in the event of their arrival at the age of fifty years and the prior deaths of the brothers and sister of the testator. The

alternative gift of the corpus of the trust to the heirs at law of the nephew and niece, respectively, was also contingent upon the prior deaths of all of the persons named in this clause of the will as beneficiaries of the trust provided for therein.

In the fourth paragraph of the instant will the gift of the corpus of the trust to the next of kin of the nephew and niece, respectively, was also effective only in the event that the corpus of the trust had " not been turned over and terminated as hereinbefore provided," *then* the same was given and devised to the next of kin of the nephew and niece, respectively, and the trustee was directed to " turn over and pay over the same accordingly." The word " then," as used in the fourth paragraph of the instant will, clearly relates to the second clause of the will, and fixes the time of the gift to the next of kin of the nephew and niece, respectively, as the time of the happening of all of the events named and *hereinbefore provided for* in the second clause of the will. (*Columbia-Knickerbocker Trust Co.* v. *Wainwright*, 158 App. Div. 884; affd., 213 N. Y. 680.)

It is indicated quite clearly from the language used in the instant will, read in the light of settled rules of construction, that the testator did not intend that the remainder of the trust estate should vest absolutely upon his death in the children (the heirs and/or next of kin presumptive) of his nephew and niece, respectively, but should be postponed until the time arrived (if it did arrive) for division and distribution, and then to vest absolutely in such persons, as a class, who answered to the description of heirs and/or next of kin of the nephew and niece, respectively, upon their death.

Where final division and distribution is to be made among a class the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. (*Teed* v. *Morton*, 60 N. Y. 506; *Goebel* v. *Wolf*, 113 id. 405, 411; *Matter of Smith*, 131 id. 239, 247; *Matter of Baer*, 147 id. 348; *Haynes* v. *Sherman*, 117 id. 433.)

No one is heir to the living, and the words " heirs at law and next of kin " have a well-known and commonly understood meaning. In each case it is well settled that the words are to be construed as referring to those who are such at the time of the ancestor's death (*Doctor* v. *Hughes*, 225 N. Y. 305; *Arnot* v. *Arnot*, 75 App. Div. 230, 234; *Wadsworth* v. *Murray*, 161 N. Y. 274; *Campbell* v. *Rawdon*, 18 id. 412; *Cushman* v. *Horton*, 59 id. 149), unless the context clearly shows that the testator used the words in a sense other than the primary and legal sense, *e. g.*, to the lawful heirs

and next of kin now living of "A," in which case it would be obvious that the term was used to signify those who were in the situation of heirs apparent to "A" at the death of the testator, and not those who should afterward turn out to be A's heirs and next of kin upon his death (*Cushman* v. *Horton, supra*); but in the instant will there is nothing in the context to indicate that the testator used these words in a sense other than the primary and legal sense.

Furthermore, there is not in this devise and bequest any words of direct and immediate gift, vesting the remainder absolutely upon the testator's death in the children (the heirs and/or next of kin presumptive) of his nephew and niece, respectively, but, instead a direction that the trustee should turn over and pay over the said trust fund and estate at a future time on a certain contingency. They were to take through the medium of a power in trust, and the time of the absolute vesting of the interest was deferred until the time of distribution and delivery. The instant will, in my opinion, presents a clear and unequivocal demonstration of the expression "futurity is annexed to the substance of the gift," as determined by the authoritative decisions of this State, and warrants the application of the principle that where a future interest is bequeathed and devised, not directly to a specified person or persons, but indirectly through the exercise of a power conferred upon a trustee, the bequest and devise are designed to be contingently vested only, and survivorship at the time of delivery and distribution is an essential condition to the acquisition of an absolute interest in the subject of the gift.

Those entitled in remainder take nothing under the will except as something passes to them under the execution of a mandate laid upon the trustee to turn over and pay over the trust fund and estate. Forms and phrases of this kind are at least consistent with a construction which postpones the hour of vesting until the hour of division, or subjects a title which has vested to intermediate contingencies. (*Matter of Baer, supra; Clark* v. *Cammann*, 160 N. Y. 315, 327; *Salter* v. *Drowne*, 205 id. 204; *Matter of Evans*, 234 id. 42, 47; *Matter of Bostwick*, 236 id. 242; *Haynes* v. *Sherman, supra*.)

In the application of the rules of law as to the disposition of remainders following invalid trust provisions, the statutory definition of vested and contingent estates sheds little light upon the problem (Real Prop. Law, § 40), for an estate may be vested within the definition of the statute, although defeasible by death before the moment of division. (*Moore* v. *Littel*, 41 N. Y. 66; *Campbell* v. *Stokes*, 142 id. 23, 30; *Clowe* v. *Seavey*, 208 id. 496, 502; *Doctor*

v. *Hughes, supra.*) The only significant distinction for the purpose now in view is between an estate that is absolute and one subject to conditions. (*Matter of Curtis*, 142 N. Y. 219, 223; *Matter of Seaman*, 147 id. 69, 75; *Matter of Wilcox*, 194 id. 288, 306; *Matter of Silsby*, 229 id. 396; *Knox* v. *Jones, supra; Purdy* v. *Hayt*, 92 N. Y. 446; *Dana* v. *Murray*, 122 id. 604; *Matter of Steinwender*, 176 App. Div. 517, 519; affd., 221 N. Y. 611; *Matter of Haggerty*, 128 App. Div. 479, 480, 481; affd., 194 N. Y. 550; *Stringer* v. *Young*, 191 id. 157; *Haynes* v. *Sherman, supra.*)

As a result of these and many other adjudications, it is firmly established that as to all general questions affecting estates, the law recognizes three varieties of remainders, which may be differentiated as follows: *First*, absolutely vested remainders, in which the taking by a specified individual is directed without any proviso or limitation whatsoever, *e. g.*, to " A " for life with remainder to " B; " *second*, contingently vested remainders or remainders " vested subject to being divested," in which the remainder is given to one person with a proviso that under certain contingencies it shall go to another, *e. g.*, to " A " for life with remainder to " B " if " B " be living at "A's" death, otherwise to go to " C; " or where the remainder is given to the heirs of a specified individual after the determination of his life estate, *e. g.*, to " A " for life with remainder to his heirs, and in the application of the principle to the latter statement, the present living children of " A " take a vested, though defeasible, remainder which becomes an absolute vested remainder in possession upon the death of " A," in the class who may answer to the description of his heirs at that time; and *third*, contingent remainders, where there is no person who would have an immediate right of possession upon the ceasing of the intermediate or precedent estate, *e. g.*, to " A " for life with remainder to heirs of " B." In viewing this limitation as of the date of death of the testator (who is survived by " B ") , no person can be found of whom this can then be averred, and regarding the limitation from that point of observation, the remainder is contingent, because it would be uncertain who is entitled, or whether the event upon which it is limited would happen.

While this rule is unquestionable in the great bulk of questions affecting trust estates, the decided cases involving remainders following invalid trust provisions are uniform in placing contingently vested and purely contingent remainders in the same class so far as concerns the effects produced. The reason for this distinction is obvious. Here the inquiry is solely directed to the question of whether or not testator desired that certain specified

individuals should under every conceivable circumstance receive the remainder. If this question can be answered in the affirmative, such remainder, following an invalid trust provision, will be accelerated, otherwise it will not. Stated in another way, if viewing the matter as of the date of the death of the testator, one or more persons can be specifically pointed out who, if all of the directions of the testator, both valid and invalid, were given effect, would, upon the termination of the previous estates, be absolutely entitled to the remainder without qualification or condition or survivorship or otherwise, then on the deletion of the invalid provisions such individuals will take, otherwise they will not.

Applying the tests above considered to the language of the instant will, I hold and determine that the remainder is not absolutely vested, and, therefore, cannot be accelerated. Since this remainder consists of the entire net residuary estate, as provided by the testator in the will at bar, it must pass as intestate property. (*Haynes* v. *Sherman, supra.*)

I further hold and determine that the entire net estate, left by testator, be distributed in the following manner: One-fourth to William B. Barnes, one-fourth to Edward Barnes, one-fourth to Caroline H. Leete, one-eighth to Clarence T. Heath, and one-eighth to Irma H. Perine.

Enter decree on five days' notice construing the will accordingly.