CARL J. SCHMIDLAPP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98895. Promulgated March 6, 1941.

*Watson Washburn, Esq.*, for the petitioner.
*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

MURDOCK: This case presents a controversy revolving around the New York statutory rule against perpetuities. The Commissioner contends that the original instrument dated July 16, 1926, violated that rule and, therefore, was entirely invalid. Thus, he reasons that no valid gift was made in 1926 and the entire value of the property in 1935 is taxable as a gift made in that later year. The petitioner

concedes that those provisions of the 1926 deed which were to the effect that the trust property should be held in trust during the lives of persons not in being at the time the instrument was executed, offended the rule. He contends, nevertheless, that the instrument created at least a valid trust for the life of the grantor; further, that the instrument was valid in so far as it related to the two daughters who were living on July 16, 1926; and, in any event, it was validly supplemented as of July 16, 1926, by the instrument dated December 31, 1935. He concludes that a valid completed gift of some kind was made in 1926 which could not be taxed as a gift in 1935.

The New York rule relating to limitations upon the vesting of absolute title to personal property appears in section 11 of the Personal Property Law, and is in part as follows:

The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition, or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator; * * *

The provisions of the 1926 deed which directed that a portion of the trust property should be held in trust during the life or lives of children or grandchildren who were not in being at the time of the execution of the trust violated the rule. However, it does not follow that the deed was invalid in its entirety. The courts of New York have frequently held one part of an instrument valid even though other portions were invalid because they would suspend the absolute ownership of property for too long a period. *Tiers* v. *Tiers*, 98 N. Y. 568; *Kalish* v. *Kalish*, 166 N. Y. 368; 59 N. E. 917; *Hascall* v. *King*, 162 N. Y. 134; 56 N. E. 515; *Carrier* v. *Carrier*, 226 N. Y. 114; 123 N. E. 135. The law of New York on the subject of partial validity of testamentary instruments which contain provisions offending the rule against perpetuities is summarized as follows in *In re Durand's Will*, 250 N. Y. 45; 164 N. E. 737:

The citation of authorities is of very little use in cases of this kind upon the fundamental principles of the law of wills. All the authorities cited are a mere repetition of these rules. The difference in the opinions is in their application to varying facts. What constitutes a suspension of the power of alienation is to be determined by the facts. The law is plain. *Matter of Chittick's Will*, 243 N. Y. 304, 153 N. E. 83. That we must consider in determining the application of section 11 of the Personal Property Law, not what the actual conditions now are, but what may happen, is well established. *Matter of Mount's Will*, 185 N. Y. 162, 77 N. E. 999. If the dominant purpose is the creation of a single trust to continue during more than two minorities, absolute ownership is illegally suspended and the trust in its entirety is void, even though in some contingencies it may end within the statutory term. *Matter of Horner's Will*, 237 N. Y. 489, 143 N. E. 655. In some instances it has been possible to disregard that portion of the will which rendered the trusts illegal,

and preserve the rest. *Matter of Trevor's Will*, 239 N. Y. 6, 145 N. E. 66; *Matter of Horner*, supra. These cases express no new rule, but merely apply long-standing and well-recognized rules to new facts. The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will.

Although the Commissioner recognizes that there is a rule permitting severance in some cases, he argues that the mere possibility that the instrument might call for a violation of the rule invalidates the whole and he cites a number of New York cases on this subject. He points out that the petitioner might have another child or one or more of his children might predecease him leaving issue and, in either event, the life estate provided for such child or issue of a deceased child in the 1926 trust instrument would suspend the absolute ownership of that portion of the trust property for a period longer than two lives in being at the date of the instrument. He further contends that the rule of severance applies only to testamentary dispositions, not to *inter vivos* transfers, and that it does not apply where the valid and invalid provisions relate to the same property. He fails to cite authorities, however, in support of these last two propositions. The case of *Carrier* v. *Carrier*, supra, cited by the petitioner, holds to the contrary on both points. Other authorities that the rule of severance applies even though the valid and invalid provisions relate to estates in the same property are *In re Colegrove's Estate*, 221 N. Y. 455, 117 N. E. 813; *In re Trevor*, 239 N. Y. 6, 145 N. E. 66; *In re Lyons' Will*, 271 N. Y. 204, 2 N. E. (2d) 628; *In re Gorham's Will*, 283 N. Y. 399, 28 N. E. (2d) 888. The courts of New York, however, have refused to apply this saving rule of severance where to do so would distort the intention of the grantor as indicated in the instrument.

Decisions indicating when a gift is complete for gift tax purposes must also be kept in mind. Transfers which are not complete until the death of the transferor removes the possibility that the property will revert to him are subject to estate tax, *Helvering* v. *Hallock*, 309 U. S. 106, and are not complete gifts for gift tax purposes in some year prior to his death. A completed gift for gift tax purposes means one not coupled with a possibility of reverter which may defeat it before it ever reaches the donee. *Helvering* v. *Hallock, supra; Lorraine Manville Gould Dresselhuys*, 40 B. T. A. 30; *Emily Trevor,*

40 B. T. A. 1241; *William T. Walker*, 40 B. T. A. 762; *Marrs McLean*, 41 B. T. A. 1266; *Margaret White Marshall*, 43 B. T. A. 99. Cf. *Klein* v. *United States*, 283 U. S. 231; *Sanford* v. *Commissioner*, 308 U. S. 39; *Hughes* v. *Commissioner*, 104 Fed. (2d) 144; *Hesslein* v. *Hoey*, 91 Fed. (2d) 954; *Van Vranken* v. *Helvering*, 115 Fed. (2d) 709. One of the thoughts back of those decisions was that since section 510 makes the donee of a gift personally liable to the extent of the value received by him, he should not be taxed on a gift which he might never be able to receive and enjoy.

There are provisions of the 1926 deed which are valid and which may be conveniently and properly severed from those which were invalid or which are of doubtful validity. Those provisions which created a trust for the benefit of the children and their issue during the life of the grantor did not violate the New York rule against perpetuities, and it is reasonable to assume that the grantor would have desired to preserve that trust even though the remaining purposes of his deed could not be attained. The instrument provided for a rather distinct change immediately after the death of the petitioner. The trust property was to be divided at that time into as many portions as he had children or issue of deceased children then living. This probably meant separate trusts. Cf. *United States Trust Co. of New York* v. *Commissioner*, 296 U. S. 481; *In re Colegrove's Estate, supra; Vanderpoel* v. *Loew*, 112 N. Y. 167; 19 N. E. 481. Even if these latter provisions were wholly invalid, nevertheless, the courts of New York would probably hold that the trust which could not survive the grantor was valid. *Carrier* v. *Carrier, supra*. The trust to which we refer was to consist of the entire property and was to last for the life of the grantor or was to terminate sooner "if at any time during the life of the Grantor no children or grandchildren of the Grantor shall be living." There was no possibility of that trust being defeated by reverter. An actuary might conclude that the birth of additional children or of grandchildren would increase the duration and value of this estate, but the birth of such persons would not defeat it. Nor would the death of the decedent defeat it, since by its very terms it was to end not later than at his death. Thus, the petitioner, by the 1926 deed, made a valid completed gift of an estate in the property measured by the joint lives of himself and the survivor of an unbroken line of children and grandchildren. He could not again make a gift of that estate in 1935. The Commissioner erred in taxing the entire value of the transferred property as a gift in 1935.

The petitioner would have us conclude that completed valid gifts, in addition to or of greater value than the one which we have described in the preceding paragraph, were made under the 1926 deed.

He argues, for example, that the 1935 instrument merely supplemented the 1926 deed and was effective retroactively as of July 16, 1926. He cites no authority which directly supports this view. The argument is unsound for present purposes. The 1935 instrument became effective, for gift tax purposes at least, in 1935 and not in 1926. The other contention of the petitioner is that the 1926 deed was entirely valid in so far as it relates to the living daughters and estates for them and their issue in case they survived the petitioner. He says that the courts of New York would not declare the deed invalid in any respect as long as suspension of absolute ownership was not actually dependent upon the life of any person not in being on July 16, 1926. He argues that it was improbable that any other children would be born to the petitioner or that there would be any issue of a deceased child living at the date of the death of the petitioner. He cites *In re Mount's Will*, 185 N. Y. 162; 77 N. E. 999, and *Mount* v. *Mount, et al.*, 196 App. Div. 508; 188 N. Y. S. 170; affirmed without opinion, 234 N. Y. 568, to show that the courts of New York would wait to see what the circumstances will actually prove to be at the date of the death of the petitioner, and if the survivors at that time are only Frances and Jean, the deed would be held valid in its entirety. He does not go on to discuss what the situation would be if there were at that time another child of the grantor or issue of a deceased child, except to admit that the trusts for those persons would be held invalid. The Commissioner argues that the validity of the deed, and of any severable part of it, is determinable at its inception by assuming the most unfavorable possibilities. This difference between the parties presents an extremely difficult question and some equally difficult corollaries, all of which we believe may be avoided at this time as unnecessary to the decision of the case.

The 1926 deed provided that the property should revert to the petitioner during his lifetime upon the first occasion that he had neither children nor grandchildren living. Thus, there was a possibility that the entire property would revert to the petitioner during his lifetime, and for this reason we are unable to say that any estate greater than an estate for the life of the petitioner was the subject of a completed gift under the 1926 instrument. The estate which we have described above as a completed valid gift was in a sense a lesser estate, being dependent upon the joint lives of the petitioner and the last survivor of an unbroken line of children and grandchildren. The 1935 instrument also contained the provision that the property should revert to the grantor "if at any time during the life of the Grantor no child or children of the Grantor be living." Thus, there was the same possibility of reverter under the 1935 instrument that there was under the 1926

deed, and we are unable to say that the petitioner made a completed gift of any greater estate under the later instrument than he did under the earlier one.

Since we can not be sure to what extent the courts of New York would hold the 1926 deed valid, some discussion of the tax consequences of holdings other than the one we have adopted seems proper. If the contention of the petitioner that he made a greater gift in 1926 is sound, the result would be the same as the one which we have reached. A different result would be reached only in the event that some greater estate was given in 1935. We are unable to identify any such estate. The respondent contends that there was a gift in 1935 of life estates measured by the lives of the two daughters who were then living. Perhaps an actuary would attribute to an estate for the lives of the two daughters a value greater than the value he would attribute to the estate which we have held was the subject of a completed gift in 1926. But solution of the question before the Board is not advanced by an attempted comparison of those estates. The fact of the matter is that the petitioner, both in the 1926 deed and in the 1935 supplement, recognized the possibility that he might outlive his two daughters, and expressly provided that in that event the entire property should revert to him. Furthermore, it must be remembered that the two daughters were persons in being on July 16, 1926, and the petitioner is arguing that the trusts for their lives provided by the 1926 deed do not offend the rule against perpetuities and, therefore, those trusts were valid gifts in 1926. Also, if the petitioner made such a gift in either year, the next question would be whether he didn't make a completed gift of the remainder interests also. We do not see how the gift of the life estate could be complete and valid under either instrument any more than the gift of the remainder interest would be complete and valid. This brings us back to the answer which we have already given, namely, that, since there was a possibility of reverter in the petitioner during his life, there was no completed gift of any estate which would extend beyond his life, and, also, we have concluded that he did not make any completed gift in 1935 greater than he had theretofore made in 1926.

The income of the trust up to December 31, 1935, did not belong to the petitioner and he could not make any gift of that income. The third paragraph of the trust provided that in no event should any payment of income be made to him. That income had to be accumulated for Frances and Jean and was payable to them when they became twenty-one years of age. The parties finally realized that and set it up as accumulated income. It would not benefit the Commissioner to argue that this income could be used to discharge an obligation of the petitioner, that is, to maintain and support his two daughters. The same argument could be applied just as well under the 1935 trust instrument, because neither daughter had reached her majority in 1935.

Furthermore, any possible error in the decision of this case which would not exceed $60,000 in value of property would not change the result. The petitioner, in making gifts through these trusts in any calendar year, was entitled to two exclusions of $5,000 each. *Wilton Rubinstein*, 41 B. T. A. 220. It is not important whether or not he claimed the two $5,000 exclusions in any year. The act, in section 504 (b) of the Revenue Act of 1932, provides that "the first $5,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year." Thus, it appears that any additions in 1933 and 1934 could not possibly have exceeded the two $5,000 exclusions and the petitioner comes to 1935 with his specific exemption of $50,000 allowed in section 505 (a) intact. Since he made no gifts in any year in excess of the exclusions, he never was required to make any election in regard to the $50,000 exemption. Cf. *Lunsford Richardson*, 39 B. T. A. 927. The question of principal commissions on the trust property does not require decision.

*Decision will be entered under Rule 50.*