In the Matter of the Estate of MARGARET E. SWETT, Deceased. LUTHER I. WEBSTER, as Executor of MARGARET E. SWETT, Deceased, et al., Respondents; GLADYS M. CRISSY, as Executrix of William L. Crissy, Deceased, et al., Appellants.

Fourth Department, May 28, 1976

*Harter, Secrest & Emery (Alan F. Hilfiker,* of counsel), for Gladys M. Crissy, appellant.

*Harris, Beach & Wilcox (Edward D. Bloom* of counsel), for Rochester School for the Deaf, Appellant.

*Louis J. Lefkowitz, Attorney-General (Irwin Liebowitz* and *Samuel A. Hirshowitz* of counsel), for ultimate charitable beneficiaries.

*Swan, Fitch, Marron & Pembroke* and *(Julian Fitch* of counsel), for Genesee Valley Heart Association, Inc., respondent.

*McDermott, Turner & Hart (Robert Cauldwell* of counsel), for Trustees of Masonic Fund, respondent.

*Dutcher, Witt, Sidoti & Richards (Henry Dutcher* of counsel), for Humane Society, respondent.

*Denton, Moseson & Keyser (Thomas Farstad* of counsel), for Elmira College, respondent.

MARSH, P.J. These are appeals from an amended decree of

Surrogate's Court which construed the will of Margaret E. Swett, deceased, upon the application of the executor.

The will of deceased Margaret E. Swett who was survived by a maternal aunt, Marion Crissy Hartsen, a maternal uncle, William L. Crissy, and a cousin, Helen S. Shea, provided in such part pertinent to this appeal that:

"THIRTEENTH: All the rest, residue and remainder of my property, both real, personal and mixed and wherever situate, I give, devise and bequeath to my Trustee hereinafter named, in trust, however, for the following purposes: to hold, manage and control said trust fund, invest and re-invest the same and pay out of the net income (and out of the principal to the extent that the net income shall be insufficient) an annuity of Twelve Hundred Dollars ($1200.00) per year in monthly installments to my said cousin, HELEN S. SHEA, so long as she shall live; if in any fiscal year commencing with the date of my death, the net income of the trust shall exceed the amount, required to pay the annuity, such excess income shall be added to the principal of the trust fund to be held, and administered and distributed as herein provided. Upon the death of my cousin, HELEN S. SHEA, the entire balance remaining of the trust fund, if any, shall be distributed as part of my residuary estate.

"Until the trust fund shall be established as above provided, I direct my executor to pay the annuity in monthly installments out of the net income and, to the extent necessary, out of the principal of my residuary estate.

"FOURTEENTH: All the rest, residue and remainder of my estate both real, personal and mixed and wherever situtate, I give, devise and bequeath as follows:

"A. To Elmira College, Elmira, New York the sum of Fifteen Thousand Dollars ($15,000.00) for a memorial to be known as 'The Margaret E. Swett Memorial Fund', the income of which shall be used to establish one or more scholarships for a needy and deserving student or for needy and deserving students to be awarded in the discretion of the Trustees of the College or in accordance with any established plan of the College for the granting and awarding of scholarship assistance.

"B. The balance, if any, to be distributed as follows:

"1. Two Thousand Dollars ($2000.00) to the American Cancer Society.

"2. One Thousand Dollars ($1000.00) to the Heart Association.

"3. Two Thousand Dollars ($2000.00) to the Rochester Community Chest.

"4. Five Thousand Dollars ($5000.00) to the Trustees of the Masonic Hall and Asylum Fund.

"5. Five Thousand Dollars ($5000.00) to the Masonic Foundation of the Ancient Accepted Scottish Rite for the Northern Jurisdiction of the United States of America.

"6. Two Thousand Dollars ($2000.00) for the Rochester School for the Deaf.

"7. Two Thousand Dollars ($2000.00) for the Rochester Association for the Blind.

"8. One Thousand Dollars ($1000.00) for the Rochester Humane Society, and

"9. Two Thousand Dollars ($2000.00) for Foster Parents' Plans Inc."

A threshold issue which presents itself, although not raised by any of the parties, concerns the propriety of the Surrogate exercising the jurisdiction conferred on him by SCPA 1420: "1. A fiduciary or a person interested in obtaining a determination as to the validity, construction or effect of any provision of a will may present to the court in which the will was probated a petition showing the interest of the petitioner, the names and postoffice addresses of the other persons interested, the particular portion of the will concerning which petitioner requests the determination of the court and the necessity for construction. If the application be entertained process shall issue to all persons interested in the question to be presented to show cause why the determination should not be made. On the return of process the court shall take such proof and shall make such decree as justice requires."

The executor in conjunction with his petition to settle his accounts presented a separate petition to construe paragraphs THIRTEENTH and FOURTEENTH of the will. The basis for the requested construction concerned the existence of some $156,-204.23 of principal and income whereas the bequests, after the determination of the trust established to pay the annuity for the life of Helen S. Shea, totaled only $37,000.

As alleged in the petition: "Your petitioner believes that a question exists as to whether the distributees of said decedent are entitled to the amount by which the residuary estate

exceeds the sum of $37,000 as intestate property, or whether it was the intention of the testatrix that the entire residuary estate should pass to the residuary legatees designated in paragraph FOURTEENTH of said will in spite of the specific sums therein designated."

The question is presented as to whether the Surrogate should have proceeded under SCPA 1420 at this time or postponed construction until the death of Helen Shea, the life annuitant, the determination of the trust estate and the time for ultimate distribution to the charitable beneficiaries listed in paragraph FOURTEENTH of the will. We hold that the court should not have construed the effect of the happening of various contingencies prior to the time for distribution when the issue as to the occurrence of those contingencies is the subject of pure speculation. The early cases cautioned against deciding questions which would arise if at all in the future: "The court there refused to determine whether the plaintiff was entitled to a remainder in the estate on certain contingencies which might or might not occur. It was said: 'Upon the whole case we think there is no practical or present controversy to be determined, and the contingency may never arise in which the question can become a practical one, and even then if it do hereafter arise, there is no certainty there will be any contest whatever in regard to it. At any rate the matter is, so far as the plaintiff is concerned, a purely abstract one, and the courts do not sit to determine abstract questions.' While it is true that in proper cases the judgment of a court will conclude the rights of persons not in being at the time the judgment is rendered, there certainly is no impropriety in a court refusing to determine such rights when present conditions do not require it or render such determination advantageous to the disposition of the estate." (Matter of Mount, 185 NY 162, 167-168.)

The view expressed in Matter of Mount remains viable and its rationale continues current and cogent. "The general rule is to refuse to exercise discretion in aid of a construction unless there is a present need therefor. (Matter of Lederer, 4 AD2d 623, 625.) A Surrogate is not required to consider and determine every question which may be raised by any of the parties to the construction or validity of a will. (Matter of Mount, 185 N.Y. 162.) * * * The parties did not find it necessary to adduce testimony in aid of the construction sought. Hence, there is not present the possibility of the

nonavailability of material testimony as in *Matter of Lederer (supra). (Matter of Healy,* 22 AD2d 868.)

In *Matter of Stout* (1 AD2d 901) the court dismissed a petition as premature which sought construction of a power granted a testamentary trustee to pay from the principal of the trust up to one half of the corpus to those persons who may have aided the life income beneficiary (testator's wife) during her lifetime with remainder to charities. The court noted that the power in the trustees to invade for those who might aid the income beneficiary during her lifetime could not be exercised until the income beneficiary's death and then it might not be exercised as its exercise was subject to the sole discretion of the trustee. In addition, the broad powers to invade principal for the benefit of the life income beneficiary could exhaust the trust corpus prior to the termination of the trust with the death of the income beneficiary.

"Any present discussion as to the rights of the remaindermen as against those of a beneficiary, who may or may not be designated in the future, can only be abstract and academic. The question presented should wait for its determination until the time comes, if it does, when the power may be executed, or until facts are presented, not now before the court, which require that a determination be made. Courts have occupation enough in determining controversies which have become practical, without spending time in hearing discussions respecting those which are merely speculative or potential." *(Matter of Stout, supra,* p 902.)

The reasoning of the above cases would appear to be appropriate to the instant petition to construe the will of the decedent, Margaret Swett. There is no need to produce witnesses who might not be available at the determination of the trust upon the death of the life annuitant. The Surrogate construed the will without the aid of extrinsic evidence. There is no present need for a construction since the amount and proportions going to remaindermen need not and should not be determined until the death of the lifetime annuitant, Helen Shea. Until Helen Shea's death it will not be known how much corpus and accummulated income remains in the trust for distribution. It is speculative as to how long she will live and as to how much money will be in the trust at her death. The final amount available for distribution depends upon the investing ability of the trustee and the vicissitudes of the principal investments. The possibility that the trust corpus

might shrink cannot be discounted. An additional factor to be considered concerns the existence of the charities at the date of the termination of the trust. It may be that some of these charities listed in paragraph FOURTEENTH of the will might not be in existence at the termination of the trust which might pose a reason for another construction at that time.

No cogent reason is put forward which should move the Surrogate to exercise the discretionary power granted by SCPA 1420 to construe the amount going to remaindermen at the termination of the trust based upon the assumption that the principal and income balances will at the time of the ultimate distribution exceed $37,000. It is not outside the realm of possibility that the trust would have less than $37,000, requiring that the various charitable gifts be abated. A sound exercise of discretion requires that the petition for construction of the will of deceased, Margaret E. Swett, by the executor be dismissed. The executor does not need a construction of the particular provisions in order to secure a final settlement of his accounts as executor thus permitting the transfer of funds to the corporate trustee for implementation of the trust providing the lifetime annuity to Helen S. Shea. Construction of the paragraphs, if such becomes necessary, should await the determination of the trust *(Matter of Kilmer,* 15 Misc 2d 364; *Matter of Leary,* 91 Misc 466; *Matter of Harden,* 88 Misc 420; *Matter of Heller,* 86 Misc 148).

The amended decree should be reversed and the petition of the executor for construction of the will of Margaret E. Swett, deceased, should be dismissed as premature.

CARDAMONE, SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Amended decree unanimously reversed on the law, without costs and petition dismissed.